### BROWN *v.* COUNTY OF BUENA VISTA.

1. A court of equity will not relieve against a judgment at law where the party seeking its aid has been guilty of laches or fault.
2. Whether the time which has elapsed since the discovery of the fraud, set up as the ground of relief, be sufficient to bar the remedy, is a question to be determined by the sound discretion of the court.

APPEAL from the Circuit Court of the United States for the District of Iowa.

The facts are stated in the opinion of the court.

*Mr. George G. Wright* for the appellant.
*Mr. Galusha Parsons, contra.*

MR. JUSTICE SWAYNE delivered the opinion of the court.

This is an appeal in equity.   The appellee filed the bill. The decree of the court below was against the appellant.

In this court, the grounds relied upon to sustain the decree are, —

That the judgment sought to be enjoined was procured by the fraud and conspiracy of the appellants, Jamison the county clerk, and Moore the county treasurer ;

That the judgment was founded in a large part upon warrants of the county, issued pursuant to a fraudulent conspiracy of the same parties, and in part upon warrants which were forged ;

And that the payments upon the judgment were procured to be made. by the fraudulent misrepresentations of Langdon and Brown, through their attorney.

On the 6th of September, 1865, Jamison acknowledged service of mesne process in the case in which the judgment was recovered. It is not denied that the acknowledgment rendered the service sufficient in point of law, and warranted the court in giving the judgment, if the fraud and conspiracy charged had no existence. The allegations of the bill casting the imputation are explicitly met, and denied by the answers. This put the burden of establishing them upon the complainant. There is no proof whatever in the record upon the subject.

The judgment was rendered by default in the Circuit Court of the United States for the District of Iowa, on the 25th of October, 1865, in favor of Langdon, against the county, for $6,259.32. It was founded upon county warrants. Five of them were for the sum of $1,000 each. The residue were for smaller sums, amounting in the aggregate to less than $500. There is proof tending to show such warrants had been issued fraudulently to a very large amount, and there is some proof that the name of William S. Lee upon some of the smaller warrants included in the judgment is not in his handwriting. By whom it was written is not shown.

It appears, also, that warrant No. 86, for $1,000, embraced in the judgment, was subsequently abstracted from the clerk's office. When the testimony was taken, it was in the hands of a person in Vermont. As it was clearly thus put in circulation when overdue, the county can sustain no injury from it. A transcript of the judgment, pursuant to the law of Iowa, was filed in the clerk's office of the District Court for the county on the 29th of January, 1866. Moore and Jamison left the county in October, 1866. After their departure, the sheriff, with process, made search for the record of the proceedings of the supervisors, and for the county seal. Neither was found. When last heard from, Jamison was reported to have died in Texas. Moore was said to be living somewhere in the interior of New York. His testimony was not taken by either party.

That fraud was perpetrated as to the issuing of warrants by Jamison is very probable, and it may be that it extended to the warrants here in question.

But however this may be, there is no proof of any thing wrong on the part of Brown or Langdon. Brown was exam-

ined, cross-examined, and re-examined, as a witness.   He testi
fies, that, having sent the transcript of the judgment to the
county to be filed, and getting no answer, he went there to see
that it was done.   This brought him into contact with Jamison,
and he thinks he saw a man of the name of Moore.   He says
he never saw them at any other time, and never had any other
communication with either of them.   There is no other evi-
dence upon the subject.

The counsel of Brown appeared before the supervisors on the
5th of September, 1870, and asked that action be taken for the
payment of the judgment, and stated that it was rendered upon
warrants of the county.

The supervisors thereupon imposed a tax, accordingly, for the
year 1870.   A like tax was imposed on the 5th of September,
1871, for that year.   Under these assessments there was paid
upon the judgment, on the 20th of June, 1871, the sum of
$1,603.01, and on the 15th of May, 1872, $1,282.60.   There is
still in the hands of the county treasurer, arising from these
assessments, the further sum of $1,892.45, applicable in the
same way.   In this connection, also, we find nothing in the
case affording the slightest ground for any imputation upon
the counsel who appeared before the supervisors in behalf of
Brown, or upon Brown himself.

The power of a court of equity to relieve against a judgment,
upon the ground of fraud in a proceeding had directly for that
purpose, is well settled.

The power extends also to cases of accident and mistake.
But such relief is never given upon any ground of which the
complainant, with proper care and diligence, could have availed
himself in the proceeding at law.   In all such cases he must be
without fault or negligence.   If he be not within this category,
the power invoked will refuse to interfere, and will leave the
parties where it finds them.   Laches, as well as positive fault,
is a bar to such relief.   *Duncan* v. *Lyon*, 3 Johns. (N. Y.)
Ch. 351 ; *Marine Insurance Co.* v. *Hodgson*, 7 Cranch, 332 ;
Story, Eq. Jur., sects. 894 – 896 ; Bigelow on Estoppel, 151 ;
Freeman on Judgments, sects. 486, 489, 490, 495.

Passing by without remark the filing of the transcript in the
office of the county clerk, it is clear that on the 5th of Septem-

ber, 1871, the supervisors were expressly notified of the exist-
ence of the judgment, and for what it was recovered.   Notwith-
standing the large amount of spurious warrants known to have
been issued, it does not appear that those officers thereupon
inquired, retained counsel, or did any thing else to procure in-
formation touching the warrants upon which the judgment was
founded.

.On the contrary, upon the same day, they imposed a tax for
the payment of the judgment ; and on the same day, one year
later, the second levy was ordered for the same purpose.   It
appears they retained counsel at their session, in June, 1871,
and, that upon searching in the proper clerk's office at Des
Moines, the warrants in question could not be found.   The
search was made several times, with the same result. . The
counsel apprised the supervisors of the fact, and advised them
that nothing could be done without the warrants.   When this
announcement was made does not appear ; but the evidence
shows that in the same month of June in which he was retained
the first payment was made upon the judgment.   The second
payment was made a year later.   The warrants were found in
the proper office in the fall of 1872, partly through the efforts
of the counsel of Brown, who thereupon notified the counsel of
the supervisors, and the warrants were placed in the hands of
the latter.   The bill was not filed until at least half a year
later.

The Statute of Limitations of Iowa of five years, perhaps, does
not apply, because the fraud, if it existed, was not known suffi-
ciently early.   The statute could run only from the time of the
discovery.   But a court of equity applies the rule of laches ac-
cording to its own ideas of right and justice.   Every case is
governed chiefly by its own circumstances.   Whether the time
the negligence has subsisted is sufficient to make it effectual is
a question to be resolved by the sound discretion of the court.
*Sullivan* v. *Portland & Kennebec Railroad Co.*, 94 U. S. 806.

The facts in this connection to which we have adverted are
entitled to grave consideration.

" Nothing can call forth " — a court of equity — " into activity
but conscience, good faith, and reasonable diligence.   Where
these are wanting, the court is passive, and does nothing.

Laches and neglect are always discountenanced, and, therefore, from the beginning of this jurisdiction there was always a limitation of suits in this court." *Smith* v. *Clay*, Amb. 645.  See also Story, Eq. Jur., sect. 1520 *a ; 94* U. S., *supra ; Sample* v. *Barnes*, 14 How. 70 ; *Walker et al.* v. *Robbins et al.*, id. 584 ; *Creath's Administrator* v. *Simms*, 5 id. 192; *Bateman* v. *Willoe*, 1 Sch. & Lef. 201; *Murray* v. *Graham*, 6 Paige (N. Y.), Ch. 622; *Callaway* v. *Alexander*, 8 Leigh (Va.), 114 ; *Powell* v. *Stewart*, 17 Ala. 719; *Riddle* v. *Barker*, 13 Cal. 295.

The law of laches, like the principle of the limitation of actions, was dictated by experience, and is founded in a salutary policy.  The lapse of time carries with it the memory and life of witnesses, the muniments of evidence, and other means of proof.  The rule which gives it the effect prescribed is necessary to the peace, repose, and welfare of society.  A departure from it would open an inlet to the evils intended to be excluded.

Upon the whole case, we are of the opinion that the county is not entitled to the relief sought.

*Decree reversed and cause remanded, with directions to dismiss the bill.*