**Earl J. SMITH, Plaintiff,**

v.

**INDUSTRIAL EMPLOYERS AND DISTRIBUTORS ASSOCIATION, a corporation, and Bird and Son of Massachusetts, Inc., a corporation, Defendant.**

**No. C–73–1533 WHO.**

United States District Court,
N. D. California.

Nov. 26, 1974.

1282

James L. Browning, U. S. Atty., John F. Cooney, Jr., Asst. U. S. Atty., Civ. Div., San Francisco, Cal., for plaintiff; William J. Kilberg, Solicitor of Labor, Harold C. Nystrom, Associate Solicitor, William H. Berger, Atty., U. S. Dept. of Labor, Washington, D.C., of counsel.

Brobeck, Phleger & Harrison, Donald D. Connors, Jr., Jean C. Gaskill, San Francisco, Cal., for Industrial.

McCutchen, Doyle, Brown & Enersen, A. Crawford Greene, Jr., James L. Hunt, San Francisco, Cal., for Bird & Son.

## OPINION AND ORDER

ORRICK, District Judge.

Plaintiff, a World War II veteran, instituted this action under Section 9 of the Military Selective Service Act of 1967[1] (50 U.S.C. App. § 459) to obtain monetary credits under defendants' pension plan for his years of military service when he was absent from defendant's employment. There being no genuine issue as to any material fact, both plaintiff and defendants have moved for summary judgment. Plaintiff contends that pension benefits are perquisites of seniority which are due him by right under the Act. Defendants contend that the returning veteran is not entitled to pension credits for his years of military service under the particular terms of their pension plan which requires 1,730 hours of work per year before pension credit may be obtained for the year. Additionally, defendants claim that plaintiff's action is barred by laches. The important question presented to the

Court is whether pension benefits requiring a specific number of work hours per year are "perquisites of seniority" as defined in the leading cases construing the Act or "other benefits" as the term is used in the Act (50 U.S.C. App. § 459 (c)(1)).

## I.   FACTS

Plaintiff Smith was first employed by Pabco Products, Inc., on March 11, 1930. He worked continuously for Pabco until he was drafted into the Armed Forces of the United States in December, 1942. Mr. Smith was honorably discharged in November, 1945. Within one week of his discharge, he requested reinstatement with Pabco. Due to a strike then in progress against the company, Smith was not reinstated until March 18, 1946.

In June, 1956, defendant Industrial Employers and Distributors Association, an employer association of which Pabco was a member, instituted a pension agreement on behalf of its members. At the time the plan was executed, employees only received pension credit for employment rendered subsequent to 1956. Mr. Smith's military service ended in 1945; hence, he was not eligible for pension credit for his years in the military under the initial terms of the plan. In

---

1. The Military Selective Service Act, 50 U.S.C.App. § 459 (1967) provides in pertinent part:

   \*       \*       \*       \*       \*

   "(b) *Reemployment rights.*

   "In the case of any such person who, in order to perform such training and service, has left or leaves a position \* \* \* and \* \* \* makes application for reemployment within ninety days after he is relieved from such training and service \* \* \*

   \*       \*       \*       \*       \*

   (B) if such position was in the employ of a private employer, such person shall—

   (i) if still qualified to perform the duties of such position, be restored by such employer \* \* \* to such position or to a position of like seniority, status, and pay;

   \*       \*       \*       \*       \*

   (c)(1) Any person who is restored to a position in accordance with the provisions of paragraph \* \* \* (B) of subsection (b) \* \* \* shall be considered as having been on a furlough or leave of absence dur-

ing his period of training and service in the armed forces, shall be so restored without the loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.

   (2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph \* \* \* (B) of subsection (b) \* \* \* should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment.

   \*       \*       \*       \*       \*  "

1968, defendant Bird and Son purchased the assets of Pabco and assumed Pabco's obligations under the pension plan. Mr. Smith continued to work as an employee of Bird and Son.

Through the years the pension plan was amended several times. In 1970, the plan was amended to allow employees pension credits back to their 30th birthday. Mr. Smith served in the Armed Forces from age 37 to 40. It was not until the 1970 amendment that his years of military service qualified for pension credits under the age requirements of the plan. On November 18, 1970, Mr. Smith's 65th birthday, and the day on which he planned to retire, Mr. Smith was denied pension credits for his 34 months of military service despite the 1970 amendments to the pension plan. The denial was based on the specific terms of the pension plan which deny credits for absence due to military service [2] and require actual work of 1,730 hours per year for time to be credited toward pension benefits.[3] The denial of credit for Mr. Smith's 34 months of mili-

tary service resulted in a reduction of his monthly pension benefits by $17.71 per month from January 1, 1971, to December 31, 1973, and $23.39 per month from January 1, 1974, to the present.

## II. ISSUES

The two main issues before the Court are whether pension benefits based on a specific number of work hours per year are "perquisites of seniority" or "other benefits", and whether plaintiff's claims are barred by laches.

### A. Characterization of Benefits

Under Section 9 of the Act, if the benefits are seniority benefits, Mr. Smith is entitled to credit despite the work hour requirements. If the benefits are "other benefits", the defendants may validly impose limitations on eligibility, and Mr. Smith will be denied the benefits for failure to put in the actual work time.

■■ The Act is clear that any person who, in order to serve in the Armed Forces of the United States, leaves a

---

2. Section 7C of defendants' pension plan provides:

"*Break in Service*

\*     \*     \*     \*     \*

Absence from employment while on active duty in any military service of the United States, for which re-employment rights are accorded by act of Congress * * * shall not constitute unemployment or a break in continuous service, but no credit shall be allowed for such service."

3. Section 7A of defendants' pension plan provides:

"*Credited Past Service*.

Subject to the conditions stated in Section 6, subsection B, one (1) full year of past service credit shall be credited to an employee for each full year of covered employment rendered during the longer of the foling and prior to June 1, 1956:

(i) The period comprising the thirty-five (35) years next preceding the employee's automatic retirement date (for employees who retired on or before May 31, 1970, the period comprising the twenty-five (25) years next preceding the employee's automatic retirement date).

(ii) The period commencing with the employee's thirtieth (30th) birthday (for employees who retired on or before May 31,

1970, the period commencing with the employee's fortieth (40th) birthday).

A full year of covered employment for past service shall mean any year prior to June 1, 1956, for which a covered employee received full vacation benefits (pursuant to the applicable collective bargaining agreement between his Employer and Local 6 or Local 17, ILWU) for work performed in a covered establishment; provided, that the hours worked by a covered employee in a covered establishment during any year prior to June 1, 1956, for which he failed to receive such full vacation benefits may be added to the hours worked by such employee in any other such year in which he also failed to receive such full vacation benefits, and a full year of past service credit will be allowed for each 1730 such hours; provided, further, however, that no more than 1730 hours worked in any one year may be counted for this purpose. Continuous service rendered in a covered establishment prior to its organization by Local 6 or Local 17, ILWU or their I.L.A. predecessors shall be counted for this purpose.

The past service credit of each employee as of May 31, 1956, has been jointly determined by the Association and the Union and a written record of such determination has been made."

position in the employ of any private employer and who is honorably discharged and makes application for re-employment within 90 days after he is discharged:

> "if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of *like* seniority, status, and pay; * * *." (Emphasis added; 50 U.S. C. App. § 459(b)(B)(i))

The term "seniority", although not defined in the Act, must be construed broadly in keeping with the protective purpose of the Act. Accardi v. Pennsylvania R. R. Co., 383 U.S. 225, 86 S.Ct. 768, 15 L.Ed.2d 717 (1966). The Court has examined the legislative history of the 1967 and 1948 versions of the Military Selective Service Act (50 U.S.C. App. § 459) as well as the legislative history of its predecessor act, the Selective Training and Service Act of 1940 (54 Stat. 890), but has been unable to find a discussion of precisely what rights Congress intended to classify as "seniority benefits" and what were to be "other benefits". In defining the term, the Court must therefore rely on the broad legislative intent behind the Act. The purpose of the Military Selective Service Act was to preserve for the returning veteran the employment benefits that he would have obtained by longevity of civilian service had his career not been interrupted by military service. S.Rep. 1268, 80th Cong., 2d Sess. (1948) at 16. This philosophy has been conceptualized by the escalator principle. The returning veteran steps back onto the moving escalator of terms and conditions of employment at the position he would have held had he remained in continued civilian employment. Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946).

It is only quite recently that the World War II veterans whom the Act sought to protect have begun to reach retirement age and to litigate the question of pension benefits. This is the third case in the country to deal with a veteran's pension rights under the Act. Two other district courts have discussed the issue. In Litwicki v. PPG Industries Inc., 386 F.Supp. 296 (W.D.Pa.1973), the court drew a distinction between the vesting of pension rights and the accumulation of credit for pension rights and denied the returning veteran pension credit where he had not actually fulfilled the work hour requirement. In Davis v. Alabama Power Company, 383 F.Supp. 880 (E.D. Ala.1974), the court invalidated a work hour requirement. The court looked to the true nature of pension benefits and to the particular work hour terms required by the plan. In my view, *Davis* is the better reasoned decision.

While no appellate decisions have dealt with the specific question of work hour requirements for pension benefits, there have been numerous decisions on the validity of work hour requirements for severance and vacation benefits under the Act. In *Accardi, supra,* the Court invalidated a work hour requirement that precluded veterans from obtaining severance benefits. Defendants argue that *Accardi* is inapposite since there the court was concerned with an obviously sham work requirement of 7 days per year that was aimed at denying seniority rights to veterans who would be unable to complete even this minimal work requirement. Defendants claim that 1730 work hours required by their plan is a far more substantial prerequisite to benefits and is, therefore, a valid requirement under the Act. The Court does not agree with this narrow reading of *Accardi* or with the defendants' characterization of their work requirement.

The teaching of *Accardi* is that the Court must look to the real nature of the benefit to determine if it is a "perquisite of seniority". The Court must not let veterans be denied seniority rights because employers have redefined these rights in terms of work hours, rather than length of work. Palmarozzo v. Coca-Cola Bottling Co. of New York, 490 F.2d 586 (2d Cir. 1973). More recently, the Ninth Circuit has instructed the courts to carefully scrutinize any

efforts to convert benefits that are traditionally determined by length of service into benefits that are tied to actual time on the job. Austin v. Sears Roebuck and Co., 504 F.2d 1033 (9th Cir. 1974). In this Circuit, where employers have attempted to redefine seniority rights with benefit plans that are not strictly correlated with actual work performed, the work hour requirement has been invalidated. Locaynia v. American Airlines, 9 Cir., 457 F.2d 1253 (1972).

In the opinion of the Court, the true nature of pension benefits is closely akin to that of severance benefits that were considered "perquisites of seniority" in *Accardi* and *Palmarozzo*. With pension benefits, as with severance benefits, an employee is being compensated for the loss of his job. With the former, he is voluntarily relinquishing his job; with the latter, involuntarily. In both instances, he is exchanging all other seniority benefits for this single termination benefit. It is only natural that compensation for this loss of job and its concomitant seniority rights should be based on length of service, not on the amount of work actually performed. Palmarozzo v. Coca-Cola Bottling Co. of New York, *supra*.

A close examination of defendants' pension plan reveals that although the "credited year" for pension benefits is defined by number of hours of service, it is really length of service rather than the amount of work performed that the plan rewards. For example, if an employee works more than 1,730 hours per year, he does not receive any additional pension credits. The work hour requirement is actually another way of defining the length of time that must be worked for pension credits to accrue, albeit a substantial length of time. Time is exactly what seniority computation is based on. By redefining length of service in terms of hours rather than years, the defendants cannot change the character of pension benefits from seniority rights to some "other benefits".

Defendants rely primarily on the decisions in Dugger v. Missouri Pacific Railroad Co., 276 F.Supp. 496 (S.D.Tex. 1967), aff'd, 403 F.2d 719 (5th Cir. 1968); Foster v. Dravo Corp., 490 F.2d 55 (3d Cir. 1973); Kasmeier v. Chicago Rock Island & P. R. R., 437 F.2d 151 (10th Cir. 1971), and Austin v. Sears Roebuck, *supra*, where work hour requirements were upheld under the Act. These cases deal with vacation benefits and are not controlling on the question of pension benefits. Having characterized vacation benefits as rewards for a worker's current or short term labor (Austin v. Sears Roebuck, *supra*, at 1037; Foster v. Dravo, *supra*, 490 F.2d at 63), these courts reasonably treated the vacation rights as a function of actual labor performed and as "other benefits" under the Act. In contrast, severance and pension benefits give an employee long-term job security based on his length of service with an employer, not on the actual amount of work performed.

Defendants place particular emphasis on the Ninth Circuit's recent opinion in *Austin*. Not only did *Austin* deal with vacation benefits while the instant case deals with pension benefits, but the mechanics of computing benefits under the Sears' vacation plan that the court addressed in *Austin* were very different from those before the Court in the case at bar. In *Austin*, vacation benefits were upheld because they were closely correlated with the actual amount of work performed. Vacation benefits increased incrementally with each month of service. The court distinguished the *Austin* program from the benefit plan in Locaynia v. American Airlines, *supra*, where the work requirements did not correspond to incremental vacation increases and the work hour provisions were invalidated. Defendants' plan is more similar to the situation in *Locaynia*. The amount of pension benefits does not increase with the actual hours of work done. A flat 1,730 hours of work is required before any benefits accrue. No credit is given for additional hours worked. Moreover, in *Austin*, the returning veterans had already received paid vacations from the Army.

An additional vacation from Sears would have placed them in a better position than their civilian counterparts. In contrast, plaintiff Smith is not entitled to any pension benefits from the military. In this case, granting the plaintiff credit for his years in the military will only place him in a position equivalent to that of civilian employees who did not interrupt their regular employment to serve in the military. This was the intended purpose of the Military Selective Service Act.

### B. *Laches*

 The second issue the Court must resolve is whether plaintiff's claims are barred by laches. The test of laches is inexcusable delay and consequent detriment or prejudice to the defendant. The existence of laches is a question largely within the discretion of the trial court. Gardner v. Panama R. R. Co., 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31 (1951). The Court finds that Mr. Smith pursued his cause with due diligence. Although defendants' pension plan from its inception in 1956 denied credit for military leave and required 1,730 work hours per year, it was not until the 1970 amendments that Mr. Smith's years of military service were eligible for pension credit, save for the work hour requirement. In December, 1970, plaintiff Smith filed a complaint with the Department of Labor concerning the denial of pension benefits, and the defendants were immediately apprised that his complaint was under investigation. The time from December, 1970, until the filing of the complaint in August, 1973, was spent in investigation, negotiation, and preparation. Since the facts are clear and undisputed, defendants have not been prejudiced by even this amount of delay. The Court finds that plaintiff's claims are not barred by laches.

Accordingly, it is ordered, adjudged and decreed that:

1. Plaintiff's motion for summary judgment is granted and defendants' motion for summary judgment is denied.

2. Plaintiff is entitled to the seniority status and pay in his employment which he would have enjoyed had he not served in the Armed Forces of the United States.

3. Defendants shall compute the amount of pension benefits due plaintiff Smith, affording him as past-credited service the amount of time spent in the military service.

4. Defendants shall retroactively compensate plaintiff for the pension benefits that were unlawfully denied to him.

5. Plaintiff shall recover costs.

6. Plaintiff shall submit a judgment in accordance with the foregoing by December 10, 1974.