606 F.2d 800
 102 L.R.R.M. (BNA) 2441, 53 A.L.R.Fed. 436,
87 Lab.Cas. P 11,583
 William E. GOODMAN, Estel W. Dunn, Paul J. Hepperman,
Stanley Walker, Ronald Caldwell, Ronald D. Williams, Wesley
D. Lancaster, Michael T. Zoellner, Jimmy R. Hults, Michael
W. Ashbaugh, Eugene K. Bartlett, Peter Bastas, Gary R.
Bauer, Larry J. Beadle, Richard L. Beckemeyer, Danny E.
Bell, Burlington I. Benson, Walter G. Blank, Roger F.
Boenecke, Warren M. Bogel, Anthony J. Bonmarito, William
Box, Jr., Gary R. Burleson, Joe C. Bushong, Hans C. Carney,
Patrick M. Carroll, Michael J. Cooke, Meryl G. Counts,
William R. Daugherty, Melvin G. Davis, Ronald M. Eudy,
William D. Floyd, James H. Foutch, John M. Gerardi, Harry E.
Gibson, Jr., John H. Gilmore, Robert A. Glastetter, Dennis
L. Goeway, Ronald J. Haar, Raymond K. Herberger, Robert J.
Hoffman, Gregory G. Holdman, Ronald J. Houle, Jackie D.
Hurt, Dennis E. Iborg, Jerry W. Isenhart, Sammy W. Johnson,
Robert L. Jones, Steve Kassa, Jr., Walter E. Klemme, Ronald
V. Kujawa, Lawrence B. Lang, Gary L. Little, Charles W.
Lovelace, Ronald W. Maag, Francis M. Marietta, Leonard A.
Marsey, James A. McDonald, Leo G. Mesnier, Jr., Paul R.
Milligan, Darrell A. Morris, George C. Moseman, Jr., Donald
L. Mouser, Ivan C. Niehaus, Edward N. Noah, Jr., Larry G.
Owens, Kenneth E. Pace, Paul M. Phillips, Robert H. Pirtle,
William H. Porzel, Michael J. Potts, Bernard A. Richter,
Richard C. Root, Eric J. Rueder, Walter F. Schaub, Daniel
Schomber, Kenneth D. Sellers, Larry W. Smith, Michael G.
Spray, Larry L. Summers, William Swafford, Thomas L. Talley,
Steven V. Taylor, Buford R. Thompson, Lindell R. Thompson,
Issac Threats, Jr., Glenn R. Travers, Terry F. Vaughn,
Artemus Wallace, Jr., Johnny M. Ward, Charles L. Warren,
Robert M. Weaver, Curtis P. West, Leland R. Whitaker, Ronnie
W. Whitt, David E. Williams, Wayne E. Williams, and Jack J.
Wilson, Appellants,
v.
McDONNELL DOUGLAS CORPORATION, Appellee.
 No. 78-1701.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 12, 1979.
Decided Oct. 1, 1979.
 
 Michael J. Singer, Atty., App. Staff, Civ. Div., Dept. of Justice, Washington, D.C. (argued), Barbara Allen Babcock, Asst. Atty. Gen. and Robert E. Kopp, Washington, D.C., William H. Berger, Atty., U.S. Dept. of Labor, Atlanta, Ga., and Robert D. Kingsland, U.S. Atty., St. Louis, Mo., on brief, for appellants.
 Thomas C. Walsh, Bryan Cave, McPheeters & McRoberts, St. Louis, Mo. (argued), Dennis C. Donnelly and Craig A. Newman, St. Louis, Mo., on brief, for appellee.
 Before GIBSON, Chief Judge, and ROSS and HENLEY, Circuit Judges.
 GIBSON, Chief Judge.
 
 
 1
 Appellants, ninety-eight veterans of the United States Armed Forces who are present or former employees of McDonnell Douglas Corporation, brought suit against McDonnell Douglas pursuant to 38 U.S.C. § 2021 Et seq. (Veterans' Reemployment Rights Act) to recover for alleged violation of their reemployment rights. On August 25, 1978, the District Court[1] denied appellants' motion for partial summary judgment[2] and granted appellee's motion to dismiss on the basis of laches.[3] The veterans appeal from the order dismissing their complaint with prejudice. Title 28 U.S.C., section 1291, vests this court with jurisdiction.
 
 
 2
 Each veteran left permanent employment with McDonnell Douglas to enter active duty with the armed services, was honorably discharged, and thereafter resumed employment with McDonnell Douglas. In reinstating the veterans, McDonnell Douglas followed its established policy.
 
 
 3
 McDonnell Douglas separates its employee operations into various job classifications.[4] Each job classification divides into three labor grades (3, 2, 1) and within each grade employees progress through a specific number of ten-week segments. After completing the progression through the ten-week segments, the employee enters a ten-week test period, after which he is evaluated to determine whether he is qualified for upgrading to the next grade. Because progression through the ten-week segments is automatic, McDonnell Douglas's employment policies provided that returning veterans should be reinstated at the top of the job grade and the classification in which they were employed at the time they left to enter military service, regardless of the number of ten-week segments within the grade that each veteran had completed prior to entering military service. Accordingly, upon reinstatement each veteran immediately entered the ten-week test period.
 
 
 4
 Following his reinstatement, at some point each veteran was found qualified to be upgraded to the next higher grade within his job classification, but was not in fact upgraded because the company had placed a freeze on upgrading to the next grade. McDonnell Douglas freezes upgrading whenever it determines that there is no current need for more employees in the higher grade or when a layoff is in effect in the higher job grade. Freezes have been utilized at McDonnell Douglas since the early 1950's and recognized in collective bargaining agreements since 1958.[5]
 
 
 5
 The veterans contend that the company's failure to upgrade them immediately upon their qualification violated their statutory reemployment rights to be placed in the position they would have acquired by virtue of continued employment but for their absence in military service. See Tilton v. Missouri Pacific Railroad Co., 376 U.S. 169, 175, 181, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964); Oakley v. Louisville & Nashville Railroad Co., 338 U.S. 278, 283, 70 S.Ct. 119, 94 L.Ed. 87 (1949); Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 284-85, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946); Barrett v. Grand Trunk Western Railroad Co., 581 F.2d 132, 136 (7th Cir. 1978), Cert. denied, 440 U.S. 946, 99 S.Ct. 1423, 59 L.Ed.2d 643 (1979). The freezes in upgrading were not in effect while appellants were engaged in military service, since skilled labor is in much shorter supply during a war economy than during the vagaries of a peacetime economy. Thus there would have been no delay in the veterans' upgrading had they received their qualification during the period of time they spent in military service.
 
 
 6
 McDonnell Douglas resists the veterans' interpretation of their rights on the basis that their advancement depended upon the company's discretionary choice regarding both whether the veteran was qualified for upgrading and whether a freeze in upgrading should be put into effect. It asserts that these discretionary choices would preclude the returning veterans from showing with reasonable certainty that, as a matter of foresight, they would have enjoyed advancement simply by virtue of continuing employment during the time in military service. See McKinney v. Missouri-Kansas-Texas Railroad Co., 357 U.S. 265, 272, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958).
 
 
 7
 The veterans were reinstated at various times between 1968 and 1972 inclusive.[6] Certain appellants, disappointed by the delay in upgrading, complained to the Department of Labor (hereinafter sometimes referred to as the Department) within a few months after having been rated qualified for upgrading.[7] The Department responded to the veterans' complaints by indicating approval of McDonnell Douglas's treatment. This response was consonant with the Department's position that it had assumed in response to previous complaints from veterans returning to employment with McDonnell Douglas, some dating back at least as far as 1962. Since the Department reports its investigation of complaints to both the company which is the subject of the challenged practice and the complainant, both McDonnell Douglas and the veteran appellants were aware of the Department's position.[8]
 
 
 8
 Unsatisfied by this response from the Department of Labor, certain veterans continued to pursue their claims by applying pressure through the union to effectuate a change in McDonnell Douglas's practice. These efforts realized fruition in January of 1972 when McDonnell Douglas's labor negotiator acceded to the union's request and amended the collective bargaining agreement effective May 15, 1972.[9]
 
 
 9
 Thereafter, sometime in August or September of 1972, Department of Labor representatives informed McDonnell Douglas that because 120 or more veterans had recently complained to them they were reinvestigating its practice in regard to delay in upgrading. McDonnell Douglas made a written response to the Department in October of 1972. The Department informed the company in mid-1976 that it considered their practice illegal.[10] Negotiations between the Department and McDonnell Douglas ensued but did not produce agreement, and on June 20, 1977, the Labor Department forwarded the cases to the Department of Justice which, on September 29, 1977, filed suit on behalf of the veterans.
 
 
 10
 The sole issue on appeal is whether the District Court abused its discretion in dismissing the complaint with prejudice on the basis of the doctrine of laches.[11]
 
 
 11
 The doctrine of laches is an equitable defense, and the United States Supreme Court in Gardner v. Panama Railroad Co., 342 U.S. 29, 30, 72 S.Ct. 12, 13, 96 L.Ed. 31 (1951), stated that "the existence of laches is a question primarily addressed to the discretion of the trial court." This does not mean, however, that the District Court's decision is unfettered by appropriate standards or shielded from thorough appellate review. Albermarle Paper Co. v. Moody, 422 U.S. 405, 416, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). The basic elements of laches are well established. For the application of the doctrine of laches to bar a lawsuit, the plaintiff must be guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant. Gardner v. Panama Railroad Co., 342 U.S. 29, 31, 72 S.Ct. 12, 96 L.Ed. 31 (1951); Russell v. Todd, 309 U.S. 280, 287, 60 S.Ct. 527, 84 L.Ed. 754 (1940); Southern Pacific Co. v. Bogert, 250 U.S. 483, 490, 39 S.Ct. 533, 63 L.Ed. 1099 (1919).
 
 
 12
 In applying the doctrine of laches, an important consideration is the appropriate role of an analogous statute of limitation. Appellants argue that the District Court abused its discretion by mechanically applying the analogous statute of limitation in Missouri for contract actions. This approach has been proscribed by the Supreme Court in Gardner v. Panama Railroad Co., 342 U.S. 29, 31, 72 S.Ct. 12, 96 L.Ed. 31 (1951), but the Court has not explained the relative weight to be accorded to an analogous statute of limitation.
 
 
 13
 The lower federal courts have ascribed varying degrees of importance to analogous statutes of limitation. Some courts have held that the running of an analogous statute of limitation creates a rebuttable presumption of unreasonable delay and prejudice flowing therefrom. E. g., Churma v. United States Steel Corp., 514 F.2d 589, 593 (3d Cir. 1975); Gruca v. United States Steel Corp., 495 F.2d 1252, 1259 (3d Cir. 1974); Leonick v. Jones & Laughlin Steel Corp., 258 F.2d 48, 50 (2d Cir. 1958); Schultz v. Green Bay & Western Railroad Co., 85 CCH Lab. Cas. P 11,072 at 20,187 (E.D.Wis.1979); Grisby v. Babcock & Wilcox Co., 85 CCH Lab. Cas. P 10,983 at 19,798 (N.D.Ohio 1978); Smith v. Continental Airlines, Inc., 70 CCH Lab. Cas. P 13,501 at 25,650 (C.D.Cal.1973); Muscianese v. United States Steel Corp., 354 F.Supp. 1394, 1399 (E.D.Pa.1973); Whitmore v. Norfolk & Western Railway Co., 61 CCH Lab. Cas. P 10,573 at 17,894 (N.D.Ohio 1969); Accord, Public Administrator of the County of New York v. Angela Compania Naviera, S. A., 592 F.2d 58, 64 (2d Cir. 1979), Appeal docketed, No. 78-1695 (U.S.Sup.Ct. May 11, 1979); TWM Manufacturing Co., Inc. v. Dura Corp., 592 F.2d 346, 348-49 (6th Cir. 1979); Ramos v. Continental Insurance Co., 493 F.2d 329, 332 n. 3 (1st Cir. 1974). Other courts have completely disregarded statutes of limitation in considering a defense of laches, E. g., Scott v. Atchison, Topeka & Santa Fe Railway, 78 CCH Lab. Cas. P 11,291 at 20,440-41 (C.D.Cal.1976); Farrell v. The Chesapeake and Ohio Railway Co., 77 CCH Lab. Cas. P 11,157 at 19,952 (W.D.Pa.1975); Davis v. Alabama Power Co., 383 F.Supp. 880, 894 (N.D.Ala.1974), Aff'd, 542 F.2d 659 (1976), Aff'd, 431 U.S. 581, 97 S.Ct. 2002, 52 L.Ed.2d 595 (1977); Smith v. Industrial Employers and Distributors Association, 385 F.Supp. 1281, 1287 (N.D.Cal.1974), Aff'd 546 F.2d 314 (9th Cir. 1976), Cert. denied, 431 U.S. 965, 97 S.Ct. 2921, 53 L.Ed.2d 1061 (1977); Stinner v. United States Steel Corp., 73 CCH Lab. Cas. P 14,352 at 29,126 (W.D.Pa.1974); Ufland v. Buffalo Courier Express, Inc., 394 F.Supp. 199, 201 (W.D.N.Y.1974); Accord, Delman v. Federal Products Corp., 251 F.2d 123, 127 (1st Cir. 1958); Brundage v. United States, 504 F.2d 1382, 1386 (Ct.Cl.1974), Cert. denied, 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975), or treated them as merely one element in the congeries of factors to be considered in determining whether the length of delay was unreasonable and whether the potential for prejudice was great, E. g., Brown v. County of Buena Vista, 95 U.S. 157, 160, 24 L.Ed. 422 (1877); Rozas v. Cameron Iron Works, Inc., 83 CCH Lab. Cas. P 10,407 at 17,625 (S.D.Tex.1977); Deski v. National Cash Register Co., 78 CCH Lab. Cas. P 11,198 at 20,100-01 (S.D.Ohio 1975); Hirschberg v. Braniff Airways, Inc., 404 F.Supp. 869, 874 (E.D.N.Y.1975); Accord, Hill v. W. Bruns & Co., 498 F.2d 565, 569 (2d Cir. 1974). We find that the last approach accords most favorably with the purpose of the doctrine of laches and congressional intent regarding the doctrine's application to claims pursuant to 38 U.S.C. § 2021 Et seq., to protect veterans' reemployment rights.[12]
 
 
 14
 In Holmberg v. Armbrecht, 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946) the Supreme Court stated:
 
 
 15
 Traditionally and for good reasons, statutes of limitation are not controlling measures of equitable relief. Such statutes have been drawn upon by equity solely for the light they may shed in determining that which is decisive for the chancellor's intervention, namely, whether the plaintiff has inexcusably slept on his rights so as to make a decree against the defendant unfair. * * *
 
 
 16
 Equity eschews mechanical rules; it depends on flexibility. Equity has acted on the principle that "laches is not like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced, an inequity founded upon some change in the condition or relations of the property or the parties." Galliher v. Cadwell, 145 U.S. 368, 373 (, 12 S.Ct. 873, 875, 36 L.Ed. 738); See Southern Pacific Co. v. Bogert, 250 U.S. 483, 488-89 (, 39 S.Ct. 533, 535, 63 L.Ed. 1099).
 
 
 17
 The doctrine of laches is premised upon the same principles that underlie statutes of limitation: the desire to avoid unfairness that can result from the prosecution of stale claims. Costello v. United States, 365 U.S. 265, 282-83, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961); Brown v. County of Buena Vista, 95 U.S. 157, 161, 24 L.Ed. 422 (1877). However, the operation of laches departs from that of statutes of limitation in that laches is more flexible. The Supreme Court has repeatedly emphasized "(t)hat no arbitrary or fixed period of time has been, or will be, established as an inflexible rule, but that the delay which will defeat such a suit must in every case depend on the peculiar equitable circumstances of that case." The Key City, 81 U.S. (14 Wall.) 653, 660, 20 L.Ed. 896 (1871). While courts may benefit from legislative determinations of when delay becomes unreasonable and prejudice may be presumed, undue deference to this judgment may result in a dereliction of the duty to examine all aspects of the equities affecting each case. Laches is considered an affirmative defense, See Fed.R.Civ.P. 8(c), and generally the burden of persuasion on an affirmative defense rests with the defendant. Law v. Royal Palm Beach Colony, Inc., 578 F.2d 98, 101 (5th Cir. 1978); Matter of Henderson, 577 F.2d 997, 1002 (5th Cir. 1978); Wheat v. Hall, 535 F.2d 874, 876 (5th Cir. 1976); But see Bernard v. Gulf Oil Co.,596 F.2d 1249, 1256 n. 5 (5th Cir. 1979). Courts may, however, take into account which party can best provide proof of any particular aspect of a case. Thus a defendant may better be able to establish that it has been prejudiced because of delay, while the plaintiff will generally have greater knowledge of the reasons for the delay and any excuse therefor. See EEOC v. Westinghouse Electric Corp., 592 F.2d 484 (8th Cir. 1979); Hill v. W. Bruns & Co., 498 F.2d 565, 568 (2d Cir. 1974). Mechanical rules creating presumptions based upon legislative determinations also may divert a court's attention from the real considerations involved in a determination of laches. A court should focus upon the length of the delay, the reasons therefor, how the delay affected the defendant, and the overall fairness of permitting the assertion of the claim.
 
 
 18
 Furthermore, congressional amendment, in 1974, of the statutes dealing with veterans' reemployment rights expressly prohibited the use of statutes of limitation to preclude actions to enforce the reemployment rights.[13] This clarification of congressional intent suggests that Congress did not consider the differing state legislative determinations regarding stale claims to be an appropriate guide for courts confronted with veteran reemployment actions. Application of laches furthers a policy of ensuring that the rights available to returned veterans remain as uniform as possible throughout the country. Over-reliance on state statutes of limitation would detract from this goal.[14] As stated in Occidental Life Insurance Co. v. EEOC, 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977): "State legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies."
 
 
 19
 We now examine the application of the doctrine of laches to the case at bar. The first issue we address is whether the governmental delay in processing the claims should accrue against the appellant veterans. It has been charged that attributing this delay to the veterans unfairly penalizes the veterans and disembowels the Act. Blair v. Page Aircraft Maintenance, Inc., 467 F.2d 815, 821 (7th Cir. 1972) (Tuttle, J., concurring in part and dissenting in part). However, some courts have attributed to the veterans the delay during the time the matter was pending before the Department of Labor. Churma v. United States Steel Corp., 514 F.2d 589, 593 (3d Cir. 1975); Bell v. Aerodex, Inc., 473 F.2d 869, 873 (5th Cir. 1973); Blair v. Page Aircraft Maintenance, Inc., 467 F.2d 815, 819-20 (5th Cir. 1972). Other courts have refused to use delay by the Department of Labor in handling a veteran's claim to serve as a basis for barring the assertion of that claim. Barrett v. Grand Trunk Western Railroad Co., 86 CCH Lab. Cas. P 11,334 at 21,262 (N.D.Ill.1979); Schultz v. Green Bay & Western Railroad Co., 85 CCH Lab. Cas. P 11,072 at 20,187 (E.D.Wis.1979); Rozas v. Cameron Iron Works, Inc., 83 Lab. Cas. P 10,407 at 17,625 (S.D.Tex.1977); Hirschberg v. Braniff Airways, Inc., 404 F.Supp. 869, 872-74 (E.D.N.Y.1975); Stinner v. United States Steel Corp., 73 CCH Lab. Cas. P 14,352 at 29,127 (W.D.Pa.1974). Courts have also held that, regardless of whether a plaintiff should be affected by dilatoriness on the part of the Government, a plaintiff should not lose his rights while his claim is subjected to good-faith negotiations. Farrell v. Chesapeake and Ohio Railway Co., 77 CCH Lab. Cas. P 11,157 at 19,952 (W.D.Pa.1975); Smith v. Industrial Employers and Distributors Association, 385 F.Supp. 1281, 1287 (N.D.Cal.1974), Aff'd, 546 F.2d 314 (9th Cir. 1976), Cert. denied, 431 U.S. 965, 97 S.Ct. 2921, 53 L.Ed.2d 1061 (1977); Ufland v. Buffalo Courier Express, Inc., 394 F.Supp. 199, 201 (W.D.N.Y.1974); Muscianese v. United States Steel Corp., 354 F.Supp. 1394, 1400 (E.D.Pa.1973).
 
 
 20
 Various considerations underlie the decision of whether time spent by the Government in processing a claim should be allowed to prejudice a plaintiff's right to sue for enforcement of federally granted rights.[15] A committee report, which is part of the legislative history of the 1974 amendment of the veterans' reemployment rights statute, suggests that it is inappropriate to charge against the veteran the time spent by the Department of Labor. S.Rep. No. 93-907, 93rd Cong., 2d Sess. 111-12, 113 (1974) U.S.Code Cong. & Admin.News 1974, p. 6313. However, the magnitude of the burden placed upon the veteran will not always outweigh the injustice that would accrue to the defendant if the suit were allowed to proceed. The prosecution of stale claims is certainly not a satisfactory norm. Claims should be closely scrutinized and the doctrine of laches is applicable to appropriate factual situations.
 
 
 21
 While it cannot be disputed that the Department of Labor has unfairly treated the veterans in this case, we note that they voluntarily chose to rely upon the services of the Department rather than secure private counsel. It is necessary to consider the perspective of McDonnell Douglas. McDonnell Douglas justifiably relied upon a long-standing endorsement of its employment practices and the Department has not proffered any excuse for its sudden reversal of position or for holding the claims in abeyance for a lengthy period of time. Broadly speaking, the Department has misled all parties by its dilatory processing of complaints and its equivocations.
 
 
 22
 The determination of whether a delay is inexcusable is closely intertwined with the issue of whether a defendant suffered prejudice from the delay. Public Administrator of the County of New York v. Angela Compania Naviera, S. A., 592 F.2d 58, 64 (2d Cir. 1979), Appeal docketed, No. 78-1695 (U.S.Sup.Ct. May 11, 1979), Quoting Larios v. Victory Carriers, Inc.,316 F.2d 63, 66-67 (2d Cir. 1963). If only a short period of time has elapsed since the accrual of the claim, the magnitude of prejudice require before the suit should be barred is great, whereas if the delay is lengthy, prejudice is more likely to have occurred and less proof of prejudice will be required. Brundage v. United States, 504 F.2d 1382, 1384-87 (Ct.Cl.1974), Cert. denied, 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975); Grisham v. United States, 392 F.2d 980, 983, 183 Ct.Cl. 657, Cert. denied, 393 U.S. 843, 89 S.Ct. 125, 21 L.Ed.2d 114 (1968).
 
 
 23
 In an affidavit in support of the motion to dismiss, the vice-president of personnel of McDonnell Aircraft Co. asserted that "(s)ubstantial prejudice has resulted from the reliance which the Company reasonably placed on the determination of the Department in these matters before 1972." In particular, McDonnell Douglas claims prejudice on the basis that seventy-four percent of the potential liability of the appellants' claim is no longer recoverable because the government contracts, against which was charged the billable work during the 1964-1972 period, have since been closed in whole or part, and many employees who worked on matters related to this suit have retired, transferred, quit or died. The latter assertion of prejudice, the unavailability of relevant testimony, falls within the category of prejudice generally recognizable in a determination of laches. Although the basic facts relevant to the merits of this controversy appear to be generally available in the record, we will not second-guess the District Court's finding that testimony which may be unavailable because of the delay might clarify the foreseeability of upgrading.[16]
 
 
 24
 Whether McDonnell Douglas's inability to recover the amount of potential damages is cognizable as an element of prejudice presents a more difficult issue.[17] This alleged prejudice is first contingent upon a finding that McDonnell Douglas's practice violated the statutory reemployment rights of the veterans. Therefore it might be concluded that any prejudice of this nature would stem from McDonnell Douglas's violation of a federal statute rather than from the delay in bringing suit. Nevertheless, McDonnell Douglas claims that it would have been able to force the Federal Government to pay the damages arising from the statutory violations if this suit had commenced earlier,[18] and furthermore asserts that it would have corrected any impropriety in its employment policies if the Department of Labor had informed it of its interpretation of illegality at an earlier date. Although we reject the contention that the cost of litigation or the payment of lost wages by itself could constitute prejudice within the contemplation of a laches defense. See Watkins v. Consumers Power Co., 80 CCH Lab. Cas. P 11,912 at 22,586 (E.D.Mich.1977), McDonnell Douglas's argument asserts prejudice of a greater breadth. McDonnell Douglas relied upon an interpretation of a government agency that the agency later repudiated. This reliance was promoted by the veterans' failure promptly to institute litigation; thus to some degree the delay by the veterans caused the prejudice resulting from reliance upon the Department's prior endorsement of McDonnell Douglas's practice.
 
 
 25
 This suit involves a delicate balancing of equities, where both the appellants and the appellee have suffered at the hands of a government agency. The procrastination and sudden reversal of position of the Department of Labor affected both parties, but the District Court concluded that greater injury fell to McDonnell Douglas. McDonnell Douglas attempted to provide the veterans with their reemployment rights by following an interpretation of the Veterans Reemployment Rights Act that was endorsed by the Department of Labor. The policy practiced did give special treatment to the veterans by reinstating them directly into a test period. Thus, only minimal deprivation of statutory rights could possibly have resulted from McDonnell Douglas's practices, and any loss to the veterans from the violation, if any, of their statutory reemployment rights has been mitigated by the change of McDonnell Douglas's practice in 1972 as a result of the collective bargaining agreement.
 
 
 26
 The situation here presents a special and extraordinary circumstance which must be woven into the web of factors involved in the determination of whether equitable considerations favor barring the suit on the basis of laches. Indeed, the flexible nature of this equitable doctrine is designed to permit exceptional circumstances to carry great weight. We cannot say that the District Court abused its discretion in balancing the equities and finding that laches requires the dismissal of this suit.
 
 
 27
 Judgment affirmed.
 
 
 
 [1]
 The Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri
 
 
 [2]
 Only ninety-four of the appellants participated in the motion for summary judgment
 
 
 [3]
 The District Court opinion is reported at 456 F.Supp. 874 (E.D.Mo.1978)
 
 
 [4]
 E. g., sheet metal assembler and riveter, mechanic electrical and radio, sheet metal worker, grinder precision tool and cutter, builder jig and fixture, etc
 
 
 [5]
 McDonnell Douglas's pre-1972 collective bargaining agreements prevented the upgrading of any employees, including veterans, at a time when a freeze was in effect, but under the new company policy, accepted through collective bargaining, a freeze is ineffective against a veteran if a less senior employee had been previously found qualified and had been upgraded. Thus, a veteran was upgraded if he had been bypassed by a junior employee
 
 
 [6]
 The earliest reinstatement of an appellant veteran, Haar, occurred January 8, 1968. Appellant Haar qualified for upgrading March 18, 1968. He was not actually upgraded until May 15, 1972, as a result of a change in the collective bargaining agreement
 
 
 [7]
 Five appellants, William E. Goodman, Patrick M. Carroll, Ronald J. Haar, Lindell Thompson, and Leo G. Mesnier, filed claims with the Labor Department's Office of Veterans' Reemployment Rights prior to 1972. These five refiled their claims in 1972 even though they had received in response to their prior claims correspondence indicating Labor Department endorsement of McDonnell Douglas's policies. The other appellants filed their claims with the Department of Labor between 1972 and 1974. Appellant Goodman resumed employment with McDonnell Douglas on January 7, 1969. He received approval for upgrading on April 21, 1969, but could not move into the next grade because a freeze was in effect. The record does not reveal the exact date he submitted his complaint to the Department, but the letter of response from the Department is dated November 13, 1969. Thus, it is reasonable to assume he made his complaint within five months of the treatment challenged in this suit
 
 
 [8]
 An example of the Department's response is a letter from George M. Vaughn, Field Representative, U. S. Department of Labor, Kansas City, Missouri, to appellant Goodman on November 13, 1969, a copy of which was sent to McDonnell Douglas. The letter concludes by stating that the employer "has not violated his statutory obligations nor your statutory rights in this matter."
 
 
 [9]
 The language incorporated into the collective bargaining agreement provides in pertinent part:
 An employee who returns from military service to his former classification and grade, and who subsequently becomes qualified for upgrading in that classification, will not be denied such upgrading solely by reason of a delay in upgrading, if a less senior employee who entered the classification and grade later than he did then holds a higher grade than that classification.
 Approximately 76 of the appellants were immediately upgraded upon the implementation of this provision.
 
 
 [10]
 The status of the claims within the Department between 1972 and 1976 is difficult to ascertain. The record contains nebulous assertions that Department employees at various levels within the bureaucracy were subjecting the claims to investigation and analysis. This stagnation in the processing of the claims evidently upset some of the appellants, as an uncontroverted affidavit by a Labor Department employee states that appellants "continuously contacted the (Department) seeking information concerning the processing of their cases attempting to hasten resolution of the matter at hand. * * * Certain of the plaintiffs and the union even carried their complaints to senators and congressmen."
 
 
 [11]
 Although the District Court also denied appellants' motion for partial summary judgment because the question of "(w)hether the upgrading was automatic or discretionary presents a crucial issue of material fact," 456 F.Supp. at 875, we do not have jurisdiction to review the denial of this motion. The denial of a motion for summary judgment is not an appealable order, and the dismissal on the basis of laches does not convert the denial of summary judgment into a "final judgment" for purposes of appeal. Burke v. Ernest W. Hahn, Inc., 592 F.2d 542, 546 n. 3 (9th Cir. 1979)
 
 
 [12]
 To a large extent even courts applying a rule of a rebuttable presumption based upon an analogous statute of limitation have treated the presumption more as a permissive inference and have fully examined the peculiar facts of the cases before them. Larios v. Victory Carriers, Inc., 316 F.2d 63, 66-67 (2d Cir. 1963); Carmalt v. General Motors Acceptance Corp., 302 F.2d 589, 590 (3d Cir. 1962); Leonick v. Jones & Laughlin Steel Corp., 258 F.2d 48, 50 (2d Cir. 1958); Muscianese v. United States Steel Corp., 354 F.Supp. 1394, 1400 n. 1 (E.D.Pa.1973)
 
 
 [13]
 38 U.S.C. § 2022 states in pertinent part: "No State statute of limitations shall apply to any proceedings under this chapter."
 
 
 [14]
 On appeal, appellants suggest in the interest of uniformity that a more appropriate statute of limitation to refer to for guidance in this case is either 28 U.S.C. § 2501, 2401, or 2415(a), each of which establishes a six-year statute of limitation. The brief submitted by the Department of Labor on behalf of appellants states: "Now that we have had occasion to consider fully the impact of the legislative history and statutory text of (the 1974) amendments, we have concluded that the congressional intent dictates that a Uniform six-year limitations period be adopted in cases presenting this laches question." We fail to understand the basis for the Department's conclusion. There is no indication in the legislative history of any intent to establish any specific time period to act as a period of limitation, nor is there any mention of the statutes cited by appellants
 
 
 [15]
 We note that this circuit has previously held that inordinate delay by a government agency, which severely prejudices a defendant, may serve to preclude relief on behalf of underlying private parties seeking redress for federal statutory violations. EEOC v. Westinghouse Electric Co., 592 F.2d 484 (8th Cir. 1979); EEOC v. Liberty Loan Corp., 584 F.2d 853, 857 (8th Cir. 1978); But see Bernard v. Gulf Oil Co., 596 F.2d 1249, 1257 (5th Cir. 1979). Leimbach v. Califano, 596 F.2d 300, 305 (8th Cir. 1979), is distinguishable on the basis that it involved public funds
 
 
 [16]
 Progression through the ten-week segments was automatic as was promotion upon qualification in the absence of a freeze, but the ten-week test period and whether a freeze would be put into effect involved company discretion, the limits of which may be relevant to the underlying dispute in this case
 
 
 [17]
 Not all prejudice to a defendant will be recognized as supporting a defense of laches. "The prejudice normally contemplated in applying laches * * * stems from such factors as loss of evidence and unavailability of witnesses, which diminish a defendant's chances of success." Powell v. Zuckert, 125 U.S.App.D.C. 55, 59, 366 F.2d 634, 638 (D.C.Cir. 1966). See also Albermarle Paper Co. v. Moody, 422 U.S. 405, 440-41, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (Marshall, J., concurring); Hill v. W. Bruns & Co., 498 F.2d 565, 568 (2d Cir. 1974); Esso International, Inc. v. S S Captain John, 443 F.2d 1144, 1150 (5th Cir. 1971); Schultz v. Green Bay and Western Railroad Co., 85 CCH Lab. Cas. P 11,072 at 20,188 (E.D.Wis.1979); Watkins v. Consumers Power Co., 80 CCH Lab. Cas. P 11,912 at 22,586 (E.D.Mich.1977). The broad equitable perspective necessary to a determination of laches encompasses, however, a greater range of evidence. As stated in Tobacco Workers International Union Local 317 v. Lorillard Corp., 448 F.2d 949, 958 (4th Cir. 1971):
 There are two kinds of prejudice which might support a defense of laches: (1) the delay has resulted in the loss of the evidence which would support the defendant's position; or (2) the defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed.
 See also United States ex rel. Arant v. Lane, 249 U.S. 367, 372, 39 S.Ct. 293, 63 L.Ed. 650 (1919); Galliher v. Cadwell, 145 U.S. 368, 372, 12 S.Ct. 873, 36 L.Ed. 738 (1892).
 
 
 [18]
 The credibility of this claim is best left to the District Court, as it involves numerous factual determinations. The actual government contracts under which this recovery would be possible are not contained in the record before this court, and the assertions by McDonnell Douglas do not provide details regarding the provisions for recovery or when the contracts actually closed