HOWES LEATHER CO., INC.,
Appellant,

v.

Gerald CARMEN, Administrator, General Services Administration, et al.

No. 81–2094.

United States Court of Appeals, District of Columbia Circuit.

Argued May 19, 1982.

Decided June 15, 1982.

William J. Kenney, Washington, D. C., with whom Scott R. Schoenfeld, Washington, D. C., was on the brief, for appellant. William A. Duerk, Washington, D. C., entered an appearance for appellant.

Cheryl M. Long, Asst. U. S. Atty., Washington, D. C., with whom Stanley S. Harris, U. S. Atty., Royce C. Lamberth and Kenneth M. Raisler, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellees.

Before MacKINNON, GINSBURG and BORK, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

This case involves a disappointed bidder in a government sale of excess materials. The bidder challenged the government's rejection of its bids, and certain government actions taken in connection with that rejection, as contrary to statute and regulation

---

and an abuse of discretion. The government moved to dismiss the complaint; at the conclusion of oral argument on the motion, the district court ruled from the bench that plaintiff lacked standing and had failed to state a claim upon which relief can be granted. This is an appeal from the dismissal order entered pursuant to the bench ruling. We reverse.

## I. BACKGROUND

The government stockpiles various materials to ensure their availability in time of war. Management of the stockpile is governed by the Strategic and Critical Materials Stock Piling Act (Stockpiling Act), 50 U.S.C. §§ 98 to 98h–4 (Supp. III 1979).[1] Congress superintends the stockpile in various ways; periodically, Congress authorizes disposal of materials it determines to be in excess of stockpile needs. *E.g.,* Omnibus Budget Reconciliation Act of 1981, Pub.L. No.97–35, § 201(a), 95 Stat. 357, 380–81; Act of August 11, 1971, Pub.L.No.92–89, 85 Stat. 315; Act of October 9, 1965, Pub.L.No. 89–245, 79 Stat. 967. *See generally* 50 U.S.C. § 98d(b). Day-to-day management of the stockpile, however, is entrusted by statute to the President, *see* 50 U.S.C. § 98e, who in Exec. Order No. 12,155, 44 Fed.Reg. 53,071 (1979), *reprinted in* 50 U.S.C. § 98 note, delegated most of his functions to the Administrator of the General Services Administration (GSA).

One of the materials in the stockpile is quebracho, a vegetable tannin extract used in leather-tanning operations. When this action commenced, the stockpile contained 145,000 long tons of quebracho, although the "goal," *see* 50 U.S.C. § 98b(b)(2); 44 C.F.R. § 328.2(b), (c) (1981), was only 28,000 long tons. Joint Appendix (J.A.) at 11, 111. On October 30, 1980, GSA announced that it would offer for sale approximately 6,000 long tons of excess quebracho and 1,800 long tons of excess chestnut in imperfect condition.[2] Howes Leather Company, one of the nation's largest quebracho consumers, tendered bids on eight specific lots of quebracho, totaling 1,627,456 pounds (726.5 long tons). The prices bid by Howes ranged from $.1927/lb. to $.2482/lb. J.A. at 7. GSA, however, accepted only bids of $.2588/lb. or more for quebracho. Of the 5,302,865 pounds of extracts on which bids had been received, GSA sold 2,759,645 pounds. J.A. at 84. There were no competing bids for the lots Howes sought. GSA simply deemed Howes' bids too low and therefore kept the lots on which Howes had bid available for future sale at an acceptable price.

Howes filed three administrative protests, all of which have been acted on in a way unfavorable to Howes, and then filed suit in district court on March 23, 1981. Howes' complaint alleged three grounds for relief: "Contracting Officer Abused Discretion in Failing to Accept Plaintiff's Bids," J.A. at 5; "Defendants Failed to Comply with National Stockpile Act," J.A. at 10; and "Stockpile Disposal Practices Contravene United States Antitrust Policies," J.A. at 13. The specifics of the first charge were that the contracting officer did not accept Howes' bids, "which were clearly reflective of the prevailing fair market price and in the best interests of the United States," and that he "relied on inaccurate and incomplete market price data." J.A. at 9–10. The second charge focused on a single aspect of the Stockpiling Act: an alleged requirement that excess materials be disposed of "expeditiously," and alleged noncompliance with this requirement. J.A. at 10–12. The third charge was that al-

---

1. All citations to the Stockpiling Act as codified are to the 1979 *United States Code* Supplement unless noted otherwise.

2. Stockpile materials may be sold only "under the authority of paragraph (4) or (5) of section 98e(a) of [50 U.S.C.] or under section 98f(a) . . . [or if] disposal, including the quantity of the material to be disposed of, has been specifically authorized by law." 50 U.S.C. § 98d(b). Section 98f(a) does not apply to this sale. Provi-

sions of § 98e(a)(4) and (5) may be in point, but GSA did not cite them as authority for the sale. Instead, GSA declared: "This material is authorized for disposal pursuant to Public Law 89–245, October 9, 1965, and Public Law 92–89, dated August 11, 1971." J.A. at 26. The statutes cited by GSA specifically authorized disposal of 111,457 long tons of quebracho found by Congress in 1965 to be in excess of needs, and 35,287 long tons found unneeded in 1971.

leged government consultation with an international cartel of quebracho producers, and reliance on market data provided by the cartel, constituted an abuse of discretion, a violation of the antitrust policies of the United States, and a violation of procurement regulations. J.A. at 13–15.

The government answered the complaint and then moved to dismiss the action on alternative grounds: Howes' lack of standing and the complaint's failure to state a claim upon which relief can be granted. The gist of the government's standing argument was that the Stockpiling Act protects the national defense, not Howes. As to the complaint's failure to state a claim, the government contended that Howes did not protest against any violation of applicable law; instead, according to the government, Howes' quarrel concerned the breadth of discretion granted GSA by Congress. The district court, after argument, ruled for the government on both grounds. It reasoned that because the lots on which Howes bid were not "sold to anyone else for a lower price," Howes had no standing to question the actions of the government and, even if Howes did have standing, the complaint stated "no cause of action entitling it to relief." J.A. at 154, 156.

## II. DISCUSSION

### A. Standing

■ The present leading case in this circuit on standing to obtain review of administrative action is *Control Data Corp. v. Baldridge,* 655 F.2d 283 (D.C.Cir.), *cert. denied,* 454 U.S. 881, 102 S.Ct. 363, 70 L.Ed.2d 190 (1981). *Control Data* sets out a three-part standing test:

1) [the complainant] must allege injury in fact; 2) [the complainant] must assert that arbitrary or capricious agency action injured an interest arguably within the

zone of interests to be protected or regulated by the statute or constitutional guarantee in question; 3) there must be no "clear and convincing" indication of a legislative intent to withhold judicial review.

*Id.* at 288–89 (footnote omitted). We indicate below why Howes falls comfortably within the *Control Data* test.

1. *Injury in fact*—As a disappointed bidder, Howes suffers injury in fact. The government has offered no persuasive distinction, for standing purposes, between buyers of goods, such as Howes, and sellers of services, such as the plaintiff in *Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859 (D.C. Cir. 1970). Howes also suffers injury in fact, as a quebracho consumer, from any "undue disruption," 50 U.S.C. § 98e(b)(2), caused by defendant-appellees in quebracho markets. Apparently assuming the absence of injury unless the lots on which Howes bid were sold to a lower bidder, the district court misperceived the twin pillars of Howes' argument. Howes argued that as a result of the government conduct it challenges, Howes was unlawfully blocked from acquiring goods it sought at a particular price and under particular conditions. Further, Howes argued, forcibly, that the government's refusal to sell at lower prices the large quantities of quebracho Congress has earmarked for disposal assists in the maintenance of artificially high market prices for the extract.[3]

2. *Zone of interests*—A consumer of stockpiled goods is at least arguably within the "zone of interests" to be protected by the Stockpiling Act.

To the maximum extent feasible—

. . . . . . .

(2) efforts shall be made in the acquisition and disposal of such materials to avoid undue disruption of the usual mar-

---

**3.** This court also noted in *Control Data* that "a plaintiff must show 'an injury to himself that is likely to be redressed by a favorable decision.' . . . [T]his constitutional requirement mandates 'that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant . . . .' " 655 F.2d at 288 n.6 (quoting *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 38, 41–42 (1976)). If

upon development of this case the district court ultimately concludes that the government has so hoarded quebracho as to bring about "undue disruption" of the quebracho market in the form of excess prices, Howes' injury as a quebracho consumer will be both traceable to the defendants' actions and likely to be redressed when GSA conforms its practices to the law.

kets of producers, processors, *and consumers* of such materials and to protect the United States against avoidable loss....

50 U.S.C. § 98e(b)(2) (emphasis added). The phrase "undue disruption of the usual markets" encompasses the situation in which the government carries stockpiled materials "to such an extent that they would constitute a threat to private industry in the country on the question of the cost of procuring their own supplies." 49 Cong.Rec. 5682 (1946) (remarks of Congressman May). Howes' contention is that the government, by not selling the large excess quantities of quebracho more quickly, has done just that.

3. *Legislative intent to withhold judicial review*—The government cites no evidence, let alone "clear and convincing" evidence, of any congressional intent to withhold review. We therefore rely on the "strong presumption of reviewability." *NRDC v. SEC*, 606 F.2d 1031, 1043 (D.C.Cir.1979); *see Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971). This element, like the other two elements of the *Control Data* test, is met. Howes has standing.

### B. *Failure to State a Claim*

A motion under Fed.R.Civ.P. 12(b)(6) to dismiss for failure to state a claim may be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). We do not believe this standard has been met at this early stage in the litigation.

 Howes' complaint alleges violation by defendant-appellees of 50 U.S.C. § 98e(b)(2), quoted *supra* pp. 820–821, and of 50 U.S.C. § 98e(a), which provides in relevant part:

The President *shall*—

.     .     .     .     .

(5) ... provide for the timely disposal of materials in the stockpile that (A) are

excess to stockpile requirements, and (B) may cause a loss to the Government if allowed to deteriorate; and

(6) dispose of materials in the stockpile the disposal of which is specifically authorized by law. [Emphasis added.]

We cannot, at this point, state with certainty that the GSA Administrator is fulfilling his delegated duty to dispose of stockpiled quebracho in accordance with the statutory conditions. Howes should have the opportunity to adduce facts in support of its claim that GSA's management of excess quebracho is not in accordance with the applicable law.

Howes also alleges abuse of discretion, which—if proven—a court may correct. 5 U.S.C. § 706(2)(A) (1976).[4] We do not suggest that the facts alleged in Howes' complaint, without more, would establish any abuse of discretion. We merely point out that further factual development of the case should illuminate the scope of GSA's discretion and the way GSA has actually exercised that discretion.

### III. CONCLUSION

Our evaluation of complaints against the Fed.R.Civ.P. 12(b)(6) standard is lenient, for unless a litigant lacks standing or simply alleges no violation of law, he should have the opportunity to adduce facts in support of his claim. The burden on trial courts need not be great; if pretrial proceedings fail to demonstrate that there is a genuine issue as to any material fact, the court may terminate the litigation without a trial. Fed.R.Civ.P. 56. Whether this is an appropriate case for summary judgment should appear after further proceedings on remand. This is not, however, an appropriate case for dismissal for lack of standing or failure to state a claim.

*Reversed and remanded for further proceedings consistent with this opinion.*

---

4. Counsel conceded at oral argument before this court that decisions under the Stockpiling

Act are not unreviewably committed to agency discretion.