GULL AIRBORNE INSTRUMENTS,
INC., Appellant,

v.

Caspar W. WEINBERGER, Secretary of
Defense of the U.S.A., et al.

No. 81–2285.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 10, 1982.

Decided Nov. 30, 1982.

Robert A. Witti, Washington, D.C., with whom F. Trowbridge Vom Baur, Washington, D.C., was on the brief, for appellant.

Michael J. Ryan, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., and Royce C. Lamberth, R. Craig Lawrence and Cheryl M. Long, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees.

Before ROBINSON, Chief Judge, and WRIGHT and WALD, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

In October 1977 the United States Navy granted a contract to Consolidated Airborne Systems, Inc. (CAS), for the procurement of certain fuel quantity test sets and data. Following several attempts to obtain administrative relief, appellant, Gull Airborne Instruments, Inc. (Gull), the second low bidder on the contract, filed suit in federal district court, alleging that both the Navy's award and its administration of the contract were illegal and asking that further performance be enjoined. The district court dismissed the case, finding that Gull had standing to protest the contract's award (although not its administration), but that its request for injunctive relief was barred by the equitable doctrine of laches. We agree with the district court regarding both Gull's standing to challenge the award of the contract and its lack of standing to challenge subsequent administration of the contract. We conclude, however, that laches does not bar Gull's claim on the contract's award. Nevertheless, we find another possible bar to reaching the merits of the case. The government has recently informed this court that the contract has been fully performed and paid for. We therefore remand to the district court for a factual determination as to whether Gull is barred from receiving the relief it has requested because of mootness.

## I. BACKGROUND

In September 1976 the U.S. Navy's Aviation Supply Office (ASO) invited bids for "capacitance-type, tank-unit, fuel quantity test sets and data." Bids were opened in January 1977. Of the three that had been entered, CAS' was the low bid on the contract and Gull's was the second low bid.

In February 1977 Gull filed a preaward protest with the procuring agency, ASO, alleging that CAS had no existing designs that could meet the contract's specifications and that the delivery schedule provided insufficient time for CAS to develop a new design. In April 1977 Gull filed a similar preaward protest with the General Accounting Office (GAO), citing the same allegations and pointing out that ASO's contracting officer had relied on the imminent CAS merger with Bendix Corporation as the basis for finding CAS financially responsible.

Bendix notified the ASO on April 26, 1977, that it had purchased all the assets, open contracts, and proposal commitments of CAS and guaranteed performance of the Navy's contract if awarded to CAS. On October 31, 1977, the contracting officer determined that the equipment involved in the contract was urgently needed and awarded the contract to CAS.[1]

On November 7, 1977, the GAO denied Gull's April protest, finding that an award could properly be made to CAS. Gull promptly requested the GAO to reconsider. In March 1978 the GAO affirmed its prior decision. In neither case did the GAO conduct an independent investigation; it relied instead on CAS' preaward assurances to the Navy that it could perform the contract as written. In the same month the Navy accepted novation of the contract with Bendix.

Under the contract Bendix was to make its first delivery in April 1978. It failed to do so. A year later, in April 1979, Gull made Freedom of Information Act (FOIA) requests for notes of or any correspondence relating to a June 1978 meeting between the Navy and Bendix. The FOIA documents were received in May 1979 and allegedly indicated that Bendix (as well as CAS) could not comply with either the contract's specifications or its delivery schedule. In July 1979 Gull wrote the Navy's contracting officer, pointing out that CAS' misrepresentations had prompted the contract award and that nonperformance of the contract had directly resulted from

---

1. When a written protest is lodged before the award of a contract, the procurement regulations require that the award be withheld until the matter is resolved unless the contracting officer determines that the items to be procured are urgently required, delivery or performance will be unduly delayed by the failure to make an award promptly, or a prompt award will be otherwise advantageous to the government. 32 C.F.R. § 2–407.8(b)(3) (1981).

these misrepresentations. It therefore requested the officer to terminate the contract for default. The contracting officer once again rejected Gull's protest. In December 1979 Gull renewed its GAO protest, claiming that the contract was void or voidable and that its maladministration had changed it to a new and different procurement. The GAO denied the protest in August 1980.

Gull filed suit in the district court in February 1981, protesting both the award and the administration of the contract and seeking a permanent injunction directing the Navy to terminate the contract. In June 1981 the Navy moved to dismiss the case on the grounds that Gull lacked standing to sue and that the action was barred by laches. The district court granted the Navy's motion in October 1981, finding that Gull had standing to challenge the award (not the maladministration) of the contract, but that laches barred the court from hearing the case.

## II. ANALYSIS

### A. *Standing*

■ Gull contends here that it is entitled, as an injured party, to seek review of both the contract award to CAS and the Navy's subsequent administration of the contract as actions in violation of the regulations governing the issuance and administration of government contracts.[2] We agree with the district court that Gull has standing to contest the award of the contract but not its administration.

■ Section 702 of the APA gives a right to judicial review to any person "adversely affected or aggrieved by agency action within the meaning of a relevant statute." *Control Data Corp. v. Baldrige,* 655 F.2d 283, 288–89 (D.C.Cir.), *cert. denied,* 454 U.S. 881, 102 S.Ct. 363, 70 L.Ed.2d 190 (1981), sets out a three-part test for standing to obtain review of administrative action: (1) the complainant must allege injury in fact; (2) the complainant must assert that arbitrary or capricious agency action injured an interest arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question; and (3) there must be no "clear and convincing" indication of a legislative intent to withhold judicial review. *See also Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976); *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970); *Howes Leather Co. v. Carmen,* 680 F.2d 818, 820 (D.C.Cir.1982) (per curiam).

■ Gull contends that it has standing under § 702 as a disappointed bidder on the Navy's contract to protest both its award to CAS and its subsequent maladministration. We agree with both Gull and the district court that disappointed bidders have standing to challenge the failure of an administering agency to follow the applicable statutes and regulations regarding contract awards. *See M. Steinthal & Co. v. Seamans,* 455 F.2d 1289 (D.C.Cir.1971); *Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859 (D.C.Cir.1970); *Airco, Inc. v. Energy Research and Development Administration,* 528 F.2d 1294 (7th Cir.1975) (per curiam);

---

**2.** This contention involves two issues: (1) whether the Navy's actions are subject to judicial review, and (2) whether Gull has standing to protest those actions. Neither Gull nor the government addressed the first issue before the district court or in their briefs to this court. It is well settled, however, that actions of a federal agency alleged to be arbitrary and capricious violations of the statutes and regulations governing the *awards* of federal contracts are subject to judicial review under § 706(2)(A) of the Administrative Procedure Act (APA). *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289 (D.C.Cir.1971); *Scanwell Laboratories, Inc. v.*

*Shaffer,* 424 F.2d 859 (D.C.Cir.1970); *Bayou State Security Servs., Inc. v. Dravo Util. Constructors, Inc.,* 674 F.2d 325 (5th Cir.1982); *Wilke, Inc. v. Department of the Army,* 485 F.2d 180 (4th Cir.1973); *Merriam v. Kunzig,* 476 F.2d 1233 (3d Cir.), *cert. denied,* 414 U.S. 911, 94 S.Ct. 233, 38 L.Ed.2d 149 (1973). Because we find that Gull had no standing to seek judicial review of the administration of the contract, we do not decide whether the Navy's actions in administering it are even reviewable under the APA. *Cf.* Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613.

*Armstrong & Armstrong, Inc. v. United States,* 514 F.2d 402 (9th Cir.1975) (per curiam); *Hayes International Corp. v. McLucas,* 509 F.2d 247 (5th Cir.), *cert. denied,* 423 U.S. 864, 96 S.Ct. 123, 46 L.Ed.2d 92 (1975); *Wilke, Inc. v. Department of the Army,* 485 F.2d 180 (4th Cir.1973); *Merriam v. Kunzig,* 476 F.2d 1233 (3d Cir.), *cert. denied,* 414 U.S. 911, 94 S.Ct. 233, 38 L.Ed.2d 149 (1973).

Gull also contends that it has standing to seek review of the Navy's alleged maladministration of the contract. To be accorded such standing, Gull must satisfy the *Control Data* test. We agree with the government and the district court that it has been unable to do so.

The first two parts of the test require that the complainant allege injury to an interest arguably within a statute's or regulation's zone of interests. Here, Gull alleges that it suffered economic loss from the illegal entry of a government-funded competitor into its own line of business. It also alleges that it suffered economic loss because it was denied an opportunity to bid on reprocurement of the contract. The government, on the other hand, argues that the only economic injury Gull suffered was the original failure to win the contract. Once a contract is in place, it contends, disappointed bidders on the contract revert to the status of ordinary citizens who have no generalized standing to object to government actions. In addition, the government argues, any economic loss sustained through denial of an opportunity to Gull to bid on the reprocurement is conjectural since Gull may not have been the low bidder on that second contract.[3]

Even were we to assume, however, that the Navy's award of the contract to CAS, its novation of the contract to Bendix, and its decision to extend the contractual delivery date conferred cognizable injury on Gull by illegally allowing CAS and Bendix to become its competitors and by preventing Gull from bidding on the reprocurement of the contract, that injury alone would be insufficient to confer standing on Gull to contest the administration of the contract. Gull must also demonstrate that the regulatory or statutory requirements it seeks to enforce were intended to protect it against such competitive injury. *See Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184; *Hardin v. Kentucky Utilities Co.,* 390 U.S. 1, 88 S.Ct. 651, 19 L.Ed.2d 787 (1968).

■ Unlike the regulations governing the award of contracts,[4] *see Merriam v. Kunzig,* 476 F.2d at 1242, the regulations governing termination of contracts for default are not designed to foster competition or to protect unsuccessful bidders from illegal injury to their economic interests. The default regulations, *see* 32 C.F.R. §§ 8–600

---

**3.** To meet this argument, Gull would have had to demonstrate a substantial probability that the relief it requested regarding the administration of the contract would have benefited it in some perceptible, tangible fashion. *Public Citizen v. Lockheed Aircraft Corp.,* 565 F.2d 708, 715 (D.C.Cir.1977). Were the contract here to be enjoined for maladministration, however, it would not automatically be awarded to Gull as the second low bidder on the original contract; instead, new bids likely would be taken. *See* Appellant's Brief at 13, 20; Appellees' Brief at 16–17. Although there is no guarantee that the second low bidder on a government contract will be awarded the contract if the low bid on the contract is rejected, there is far less likelihood that the same bidder on a new contract will be awarded the contract. As a result, Gull's interests in bidding on reprocurement are more speculative than its interests as the second low bidder on a particular contract award and do not support Gull's claim to stand-

ing to challenge the administration of the contract.

**4.** The Armed Services Procurement Regulations, promulgated pursuant to the Armed Services Procurement Act of 1947, 10 U.S.C. §§ 2301–2315, control contracting decisions of the Army, Navy, Air Force, Coast Guard, and National Aeronautics and Space Administration. The regulations that pertain to the award of government contracts require, in general, that bids comply with the government's invitation for bids (IFB) and that bids be rejected when they fail to conform to the essential requirements or the delivery schedule contained in the IFB, are submitted by nonresponsive concerns, are unreasonable as to price, or contain conditions that would modify the requirements of the IFB. *See, especially,* 32 C.F.R. §§ 2–301(a), 2–404.2, 2–407.2 (1981).

to 8–602 (1981), are intended to protect the government against injury from the contractor's inability to perform the contract and the contracting party from the government's premature or unjustified cancellation.[5] As a result, Gull must rely on its protest against the original award of the contract to CAS, not its subsequent administration, to establish that the government has illegally injured its economic interests.

## B. Laches

The government contends and the district court found that Gull's request for equitable relief on the bid award is barred by the doctrine of laches. The laches doctrine, of course, reflects the principle that "equity aids the vigilant, not those who slumber on their rights," and is designed to promote diligence and prevent enforcement of stale claims. *Powell v. Zuckert,* 366 F.2d 634, 636 (D.C.Cir.1966); 2 J. Pomeroy, *Equity Jurisprudence* § 418 (5th ed. 1941). To establish a successful laches defense, the defendant must show that the plaintiff was guilty of unreasonable delay prejudicial to the defendant. *Gardner v. Panama Railroad,* 342 U.S. 29, 31, 72 S.Ct. 12, 13, 96 L.Ed. 31 (1951) (per curiam); *Russell v. Todd,* 309 U.S. 280, 287, 60 S.Ct. 527, 530, 84 L.Ed. 754 (1940); *Southern Pacific Co. v. Bogert,* 250 U.S. 483, 490, 39 S.Ct. 533, 536, 63 L.Ed. 1099 (1919); *Powell v. Zuckert,* 366 F.2d 634. Whether the doctrine bars an action in a particular case depends upon the circumstances of that case. *Burnett v. New York Central Railroad,* 380 U.S. 424, 435, 85 S.Ct. 1050, 1058, 13 L.Ed.2d 941 (1965); *Goodman v. McDonnell Douglas Corp.,* 606 F.2d 800, 809 (8th Cir.1979), *cert. denied,* 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980); *Concerned About Trident v. Schlesinger,* 400 F.Supp. 454, 478 (D.D.C.1975).

There are, therefore, two factors to be considered in determining whether laches applies: lack of diligence by the plaintiff and injurious reliance thereon by the defendant. *Powell v. Zuckert,* 366 F.2d at 636; *Goodman v. McDonnell Douglas Corp.,* 606 F.2d at 804; *Concerned About Trident v. Schlesinger,* 400 F.Supp. at 478. Laches does not depend solely on the time that has elapsed between the alleged wrong and the institution of suit; it is "principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties." *Galliher v. Cadwell,* 145 U.S. 368, 373, 12 S.Ct. 873, 875, 36 L.Ed. 738 (1892). *See also Holmberg v. Armbrecht,* 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946); *Goodman v. McDonnell Douglas Corp.,* 606 F.2d at 805; *Concerned About Trident v. Schlesinger,* 400 F.Supp. at 478. It closely tracks the question of whether a defendant suffered prejudice from the delay. *Goodman v. McDonnell Douglas Corp.,* 606 F.2d at 807; *Public Administrator v. Angela Compania Naviera,* 592 F.2d 58, 64 (2d Cir.), *cert. dismissed,* 443 U.S. 928, 100 S.Ct. 15, 61 L.Ed.2d 897 (1979); *Larios v. Victory Carriers, Inc.,* 316 F.2d 63, 66–67 (2d Cir. 1963). If only a short period of time elapses between accrual of the claim and suit, the magnitude of prejudice required before suit would be barred is great; if the delay is lengthy, a lesser showing of prejudice is required. *Goodman v. McDonnell Douglas Corp.,* 606 F.2d at 807; *Brundage v. United States,* 504 F.2d 1382, 1386 (Ct.Cl.1974), *cert. denied,* 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975); *Grisham v. United*

---

**5.** The government may, for example, terminate a contract for default if the contractor fails to make delivery or to perform services within the contract's specified time limits or fails to perform any other contract provision or to make sufficient progress on the contract, thereby endangering its performance. 32 C.F.R. §§ 7–103.11(a), 8–602.1 (1981). *Id.* § 8–602.3 lists the factors the agency's contracting officer must consider in deciding whether to terminate a contract for default.

In the event of default the government is empowered to procure similar supplies or services elsewhere. *Id.* § 7–103.11(b). It is also allowed to avoid default by continuing the contract under a revised delivery schedule, by permitting performance of the contract through subcontracting, or by executing a no-cost termination settlement agreement. *Id.* § 8–602.4. Finally, the government is permitted to recognize a successor-in-interest to a federal contract when it is consistent with the government's interests. *Id.* § 26–402(c).

*States,* 392 F.2d 980, 983, 183 Ct.Cl. 657, *cert. denied,* 393 U.S. 843, 89 S.Ct. 125, 21 L.Ed.2d 114 (1968).

Gull instituted this action three years from the date the contract was awarded, six months from the GAO's denial of its last protest, and three years before the statute of limitations had run on its claim.[6] Gull pursued its administrative remedies diligently throughout this period. It filed a preaward protest with the Navy one month after the bids on the contract were opened in January 1977. In April of the same year it filed a similar protest with the GAO, a request denied in November. Gull thereupon asked the GAO to reconsider its denial; the GAO affirmed its April decision in March 1978. In April 1979 Gull made FOIA requests regarding the Navy's award and administration of the contract. It received the FOIA documents in May 1979. Two months later Gull again requested the Navy to terminate the contract, alleging that it had been illegally awarded and subsequently maladministered. The Navy refused to do so. In December 1979 Gull once again protested to the GAO, which declined to invalidate the contract in August 1980. In February 1981 Gull filed suit in federal district court.

■ We are mindful that review by the GAO is permissive and is not a prerequisite to judicial review. *Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d at 875. This court has, however, for obvious reasons, encouraged disappointed bidders to pursue their administrative remedies with the GAO.[7] *See Wheelabrator Corp. v. Chafee,* 455 F.2d 1306, 1313–16 (D.C.Cir.1971); Morgan, *Achieving National Goals Through Federal Contracts: Giving Form to an Unconstrained Administrative Process,* 1974 Wis. L.Rev. 301, 340, 340 n.178. Although we recognize the need for prompt adjudication of bid challenges, it would be an injustice to unsuccessful bidders if we now penalized them merely for exhausting those administrative remedies.[8]

■ On the basis of delay alone, therefore, we would not bar Gull's suit for injunctive relief, thereby punishing it for its persistent attempts to use the administrative process to resolve its dispute and for its forbearance in not filing suit before it had enough concrete facts to support its allegations. But to determine whether Gull's three-year delay in filing suit was unreasonable, we must also weigh the prejudice the government has suffered as a result of that delay. We find that the grounds on which the district court based its finding of prejudice to the government were insufficient to bar Gull's suit for injunctive relief.

■ Two kinds of prejudice support a laches defense. Plaintiff's delay in filing suit may have resulted in a loss of evidence or witnesses supporting defendant's position or the defendant may have changed its position in a manner that would not have occurred but for plaintiff's delay. *Concerned About Trident v. Schlesinger,* 400 F.Supp. at 478.

---

6. *See* 28 U.S.C. § 2401(a).

7. Indeed, we have suggested that, because of the GAO's competence and experience in procurement activities, district courts should consider, under the doctrine of primary jurisdiction, deferring review of the merits of a challenge to a procurement decision pending a GAO ruling. *See Wheelabrator Corp. v. Chafee,* 455 F.2d 1306, 1316 (D.C.Cir.1971). The courts have also encouraged district courts to take into consideration GAO decisions upholding procurement awards when deciding whether to grant injunctive relief. *See M. Steinthal & Co. v. Seamans,* 455 F.2d at 1304–05; *Textron, Inc., Bell Helicopter Textron Div. v. Adams,* 493 F.Supp. 824, 829 (D.D.C.1980).

8. Indeed, Gull's many attempts to receive administrative relief served to put the government on notice that it was not sleeping on its rights. *See Hurst v. United States Postal Serv.,* 586 F.2d 1197, 1200 (8th Cir.1978); *Cady v. Morton,* 527 F.2d 786, 792 (9th Cir.1975); *Concerned About Trident v. Schlesinger,* 400 F.Supp. 454, 479–80 (D.D.C.1975). *See also Etelson v. Office of Personnel Management,* 684 F.2d 918, 924 n.8 (D.C.Cir.1982) (government attorney challenging method used by government in evaluating candidates for administrative law judge positions had not sat on his rights even though he waited nine years before filing suit since he had been pursuing administrative and legislative remedies during those years).

The district court found that the government had been prejudiced in both ways in this case. First, it stated that the death of the original contracting officer would seriously prejudice the government's ability to combat the charge that the award of the contract was arbitrary and capricious. Second, the court found that if the contract were terminated for default, the government would be liable for all the costs Bendix had incurred in performing the contract up to the date an injunction against further performance issued.

■ Neither of these grounds supports a finding of laches in this case. The government's own regulations require documentation of all actions taken with respect to a contract. *See* 32 C.F.R. § 1–308 (1981). This documentation is sufficient to constitute a full history of the transaction and gives any reviewing body the ability to reconstruct the pertinent events. Thus, the loss of a crucial witness in this case is cured by the documentation required by the government's own regulations.

■ The district court also found that the government stood to suffer financial prejudice by Gull's delay in bringing suit. Yet, when Gull filed this suit in district court none of the test sets had been delivered to the government. The government could not have, and did not, therefore, argue that it had lost any monies paid to Bendix for performance of the contract. Bendix might, of course, attempt to sue the government for the costs incurred in its attempt to perform up to the time of filing. The Comptroller General has held, however, that if an award is made contrary to statutory or regulatory requirements in reliance on some statement or action of the contractor, or if the contractor is on direct notice that the procedures being followed violate such requirements, then the government may cancel the award without liability except to the extent recovery may be had on the basis of *quantum meruit* for work done and accepted by the government. *See New England Telephone and Telegraph Co.,* No. B–197297, 80–2 Comptroller's Procurement Decisions at 7–8 (Sept. 25, 1980). *See also*

*Prestex, Inc. v. United States,* 320 F.2d 367, 162 Ct.Cl. 620 (1963).

■ For purposes of reviewing the laches issue on this appeal, we must take as proven Gull's allegations that misrepresentations by CAS secured the award of the contract. *Bishop v. Wood,* 426 U.S. 341, 347, 96 S.Ct. 2074, 2078, 48 L.Ed.2d 684 (1976). Assuming Gull's allegations to be true, the government would have been allowed to cancel the contract without liability because it was illegally awarded except to the extent that Bendix might have sued to recover its costs under a *quantum meruit* theory. At the time this suit was filed, however, no *quantum meruit* recovery was likely since Bendix had made no deliveries to the government. Therefore, the government would not have been prejudiced financially if it had rescinded the contract at that point.

In sum, we do not think the district court should have held that the complaint was barred under the doctrine of laches. Gull filed this suit only a few months after the GAO denied its last administrative protest. No deliveries on the contract had been made when it filed. The grounds on which the district court found prejudice to the government were insufficient to support that finding.

## C. Mootness

■ During oral argument before this court, and in a "Suggestion of Mootness" filed shortly thereafter, the government, however, stated that Bendix has now fully performed its contract with the Navy and that the Navy has fully paid for that contract. Gull's request for injunctive relief may therefore very well be moot. Federal courts are "not empowered to decide ... abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it." *California v. San Pablo & Tulane Railroad,* 149 U.S. 308, 314, 13 S.Ct. 876, 878, 37 L.Ed. 747 (1893); *Northwest Airlines, Inc. v. Federal Aviation Administration,* 675 F.2d 1303, 1306 (D.C.Cir.1982); *United*

States v. Ford Motor Co., 574 F.2d 534, 539 (D.C.Cir.1978). Upon the record before us, we are unable to determine whether injunctive relief on the bid award is still realistically a remedy.[9]

If the test sets have been delivered, and satisfactorily fulfill the government's requirements, there is no justification for re-awarding the contract to a more deserving bidder. If, however, the contract has not been fully or satisfactorily performed, then injunctive relief *may* still be available and appropriate. We therefore remand the case to the district court for a factual determination on the issue of mootness.[10] *See Graves v. Walton County Board of Education, 686 F.2d 1135, 1136–37 (11th Cir.1982); New York Health and Hospitals Corp. v. Blum, 678 F.2d 392 (2d Cir.1982).*

*Affirmed in part, reversed in part, and remanded for further proceedings as directed by this opinion.*

---

**9.** Post-*Scanwell* courts have considered several factors in exercising their discretion to issue or refuse to issue an injunction. *See* Note, *Judicial Review and Remedies for the Unsuccessful Bidder on Federal Government Contracts,* 47 N.Y.U.L.Rev. 496, 513–17 (1972). They have looked carefully at the interests to be affected by injunctive relief, recognizing that substantial harm may accrue to the government and the public when agencies are unable to make necessary procurements without undue delay. Although finding merit in the claims of disappointed bidders, they have struck the balance of equities in favor of the government's interests in the smooth and efficient functioning of the procurement process at the expense of the interests of the unsuccessful bidder in the integrity of the bidding process and equal access to the procurement dollar (and of the public in fairness and competitive bidding). *See Simpson Elec. Co. v. Seamans,* 317 F.Supp. 684 (D.D.C.1970). *See also Wheelabrator Corp. v. Chafee,* 455 F.2d 1306; *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289; *A.G. Schoonmaker Co. v. Resor,* 445 F.2d 726 (D.C.Cir.1971); *Blackhawk Heating & Plumbing Co. v. Driver,* 433 F.2d 1137 (D.C.Cir.1970); *Lombard Corp. v. Resor,* 321 F.Supp. 687 (D.D.C.1970).

These courts have also taken into account the availability of a damage remedy in the Court of Claims for bid preparation losses resulting from illegal agency action. *See M. Steinthal & Co. v. Seamans,* 455 F.2d at 1302–03. And partial performance of a contract has been considered to be a substantial factor in the denial of injunctions to unsuccessful bidders. *Keco Indus. v. Laird,* 318 F.Supp. 1361, 1364 (D.D.C.1970).

**10.** We are mindful that Gull urges that injunctive relief is the only remedy that will compensate it for the losses it allegedly has sustained. Brief for Appellant at 31. We believe, however, that even if the claim for injunctive relief is extinguished by mootness, Gull may retain a viable claim for damages to the extent of its bid preparation costs, *Robert F. Simmons & Assoc. v. United States,* 360 F.2d 962, 175 Ct.Cl. 510 (1966); *Heyer Prods. Co. v. United States,* 140 F.Supp. 409, 413–14, 135 Ct.Cl. 63 (1956), damages clearly not nominal. If these costs are less than $10,000, Gull can seek recovery in the district court, 28 U.S.C. § 1346(a)(2); otherwise, its remedy lies in the Court of Claims. *See Keco Indus. v. United States,* 428 F.2d 1233, 192 Ct.Cl. 773 (1970). Because the claim for damages may survive the completion of performance of the contract under challenge, this litigation is not necessarily moot even if no injunctive relief is appropriate.