**BELLEVUE BUS SERVICE, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 661–86C.**

United States Claims Court.

July 6, 1988.

Michael L. Munch, Bellevue, Neb., for plaintiff.

Stuart James, with whom were Asst. Atty. Gen. John R. Bolton, David M. Cohen, and M. Susan Burnett, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

This is an action brought by an unsuccessful bidder to recover bid preparation costs. For the reasons that follow, defendant's pending motion for summary judgment is granted and the action is dismissed.

### BACKGROUND [1]

The claim has its genesis in a solicitation issued by the Department of the Air Force on May 3, 1985, for school bus services at Offutt Air Force Base in Nebraska. An amendment to the solicitation was issued the same day. It related to the number of buses needed and the aisle dimension of the buses. It also fixed the bid opening date as June 6, 1985. A second amendment was issued on May 20. It moved the opening date to June 19, and added a requirement for a preaward inspection:

Prior to award of this solicitation, a preaward inspection of the apparent low bidder's school transportation vehicles will be conducted. The inspection will be performed by officials from Offutt AFB, NE. The purpose of this inspection is to establish that the prospective contractor for school transportation service complies with or exceeds the state of Nebraska's minimum standards governing school transportation vehicles. In the event that the preaward inspection reveals that the apparent low bidder cannot meet the established State of Nebraska criteria for the school transportation, the bidder will be declared not responsible and the bid will be rejected.

Bellevue Bus Service, Inc. ("Bellevue") submitted a bid. At the opening, the apparent low bidder was Pony Express Cab & Bus, Inc. ("Pony Express"). Bellevue was the second low bidder. In accordance with the second amendment, Pony Express' equipment was inspected on June 17. A report dated June 19 and prepared by the Quality Assurance Evaluator found a number of "discrepancies" that prevented the buses from meeting solicitation specifications. Pony Express was notified by letter the following day that its bid was "rejected as non-responsive." [2]

With Pony Express apparently out of consideration, Bellevue became the low bidder. Its buses were inspected on June 24. Although minor discrepancies were found, they were correctible, and the overall condition of the vehicles was found to be satisfactory.

Also on June 24, however, Pony Express lodged a complaint with the Contracting Officer ("CO"). It states, in substance, that Pony Express had effectively less than one day to get ready for the inspection, that some of the alleged discrepancies were not appropriately chargeable under Nebraska law, and that remaining discrepancies could be cured. In response to the protest, the CO rescinded the decision of June 20, and notified Pony Express on July 1 that a new inspection was scheduled for July 11. On July 1, Bellevue sent a letter to defendant protesting the rescission and insisting that it should be awarded the contract.

Despite Bellevue's protest, the reinspection of July 11 took place and resulted in

---

**1.** The statement of facts is drawn from defendant's proposed findings of uncontroverted fact (which plaintiff accepts) and the documents attached to the motion. Although plaintiff provided a statement of genuine issues, it is more properly characterized as Bellevue's own proposed facts. They do not contradict any of defendant's proposed findings. This order is fully consistent with plaintiff's submission. Consequently, the court finds that no genuine issue of material fact exists and that the action

is appropriate for summary judgment. RUSCC 56.

**2.** Although the notification letter stated that Pony Express' bid was rejected as "non-responsive," the context in which that statement was made indicates that the initial decision to reject Pony Express was actually based on a determination that the firm was not *responsible*. *See Bellevue Bus Serv., Inc.*, B–219814.2, Sept. 27, 1985, 85–2 CPD ¶ 349.

the notation of four relatively minor discrepancies. Overall, the Government found that the Pony Express buses met solicitation requirements, assuming that the discrepancies would be corrected. On July 23, 1985, Bellevue's protest of July 1 was denied on the grounds that Pony Express had been improperly denied sufficient notice to prepare for the first inspection and that the reinspection was thus proper.

Bellevue protested the decision to permit reinspection to the General Accounting Office ("GAO") on August 5, 1985. The protest was denied ten days later. The GAO held that the determination of Pony Express' ability to perform concerned the bidder's responsibility and, because evidence of a firm's responsibility may be furnished any time prior to award, the CO could properly exercise his discretion to permit a second preaward inspection. *Bellevue Bus Serv., Inc.,* B–219814, Aug. 15, 1985, 85–2 CPD ¶ 176, *aff'd on reconsideration,* B–219814.2, Sept. 27, 1985, 85–2 CPD ¶ 349.

The contract was awarded to Pony Express on August 20, 1985. Apparently, the Air Force was less than pleased with Pony Express' performance. On August 23, it issued a cure notice to Pony Express referring to a "failure to provide school bus service." It listed several discrepancies and warned that failure to cure within ten days would result in termination for default. On September 11, 1985, Pony Express was default terminated.

Because transportation had to be provided immediately for the school children, an emergency solicitation was issued. Bidders on the previous solicitation were contacted and allowed to make oral bids. One of those contacted was Bellevue. It was once again the second low bidder, however, and was thus unsuccessful. It filed another protest with the GAO. This protest was dismissed as being untimely filed. *Bellevue Bus Serv., Inc.,* B–219814.3, Oct. 11, 1985, 85–2 CPD ¶ 407.

On November 11, 1986, subsequent to a transfer from the U.S. District Court for the District of Nebraska, Bellevue filed its amended complaint in this court. Defendant filed its motion for summary judgment on May 9, 1988. Plaintiff has responded and the motion is ready for disposition.

## DISCUSSION

### *The First Award to Pony Express*

Based on the circumstances described above, plaintiff asserts two claims against defendant. First, it contends that the decision to set aside the first rejection of Pony Express and to permit reinspection violated Bellevue's rights in three respects: (1) section 303B(a) of the Competition in Contracting Act ("CICA"), 41 U.S.C. § 253b(a) (1982), mandates evaluation of bids solely on the basis of factors specified in the solicitation; (2) the reinspection violated the terms of the solicitation; and (3) defendant's actions were arbitrary and capricious.

■ As this court has frequently stated, contracting officers are given wide discretion in their evaluation of bids and their application of procurement regulations. *See, e.g., CACI Field Servs., Inc. v. United States,* 13 Cl.Ct. 718, 725 (1987); *Action Mfg. Co. v. United States,* 10 Cl.Ct. 474, 478 (1986); *Electro–Methods, Inc. v. United States,* 7 Cl.Ct. 755, 762 (1985). This includes the determination of a bidder's responsibility. *Venice Maid Co. v. United States,* 225 Ct.Cl. 418, 431, 639 F.2d 690, 698 (1980); *Keco Indus., Inc. v. United States,* 203 Ct.Cl. 566, 576, 492 F.2d 1200, 1205 (1974). It is incumbent on Bellevue either to demonstrate that the decision to reinspect was irrational or unreasonable, or to show a clear and prejudicial violation of applicable statutes or regulations. *Kentron Hawaii, Ltd. v. Warner,* 480 F.2d 1166, 1169 (D.C.Cir.1973); *Baird Corp. v. United States,* 1 Cl.Ct. 662, 664 (1983).

■ Insofar as is relevant here, section 303B(a) was violated only if the evaluation of Pony Express' bid was based on factors not specified in the solicitation. Clearly it was not. The evaluation was based on the minimum requirements for school buses set out in the solicitation. Furthermore, the decision to reinspect was not precluded by the terms of the solicitation. As the Comp-

troller General points out,[3] the decision whether to accept a bidder as responsible rests with the CO. *Bellevue Bus Serv., Inc.*, B–219814, Aug. 15, 1985, 85–2 CPD ¶ 176. In this case, the CO did not exceed his authority or the terms of the solicitation in deciding, prior to award, to reinspect Pony Express' buses to determine whether the bidder was responsible.

Additionally, the court notes that the inspection criteria called for rejection of the bidder upon a determination that it *"cannot* meet the established State of Nebraska criteria for school transportation." (emphasis added.) The first inspection merely determined that the buses *did not* meet the criteria. There is no inconsistency between that conclusion and a decision to reinspect to determine if the equipment *could not,* assuming corrections, meet the requirements, particularly given the virtual lack of opportunity to prepare for the inspection. The court concludes that the defendant's actions leading to the first award to Pony Express were consistent with the solicitation, did not violate CICA, and were not arbitrary or capricious.

*The Reprocurement*

 Bellevue's second claim relates to defendant's resolicitation of the entire contract upon Pony Express' default. Bellevue argues that upon the default termination it should automatically have become the successful bidder under the first solici-

tation. It provides no legal support for that argument.

Pony Express began performing on the contract on approximately August 23, 1985. The default termination took place after award and almost three weeks after performance began. Insofar as the unsuccessful bidders on the first solicitation were concerned, therefore, the contract was complete. *See Gull Airborne Indus., Inc. v. Weinberger,* 694 F.2d 838, 842 n. 3 (D.C. Cir.1982); *cf. Venice Maid Co.,* 225 Ct.Cl. at 428–36, 639 F.2d at 696–700; *Zoda v. United States,* 148 Ct.Cl. 49, 57, 180 F.Supp. 419, 424 (1960). To be considered for the reprocured contract, they had to bid on the new solicitation, which some, including Bellevue, did. Defendant was therefore correct in treating the first contract as a discrete, terminated event. To receive the reprocured contract, Bellevue had to be the lowest qualified bidder; it was not.[4]

## CONCLUSION

Defendant's motion for summary judgment is granted. The Clerk is directed to dismiss the complaint. No costs.

---

3. The Comptroller General's decision in this action is not binding on the court. 31 U.S.C. § 3556 (Supp. II 1984). It merely becomes part of the record to be reviewed. *Id.* The decisions below, however, as well as other Comptroller General decisions on which they rely, can be used as general guidance when they are reasonable and persuasive. *See CACI Field Servs., Inc. v. United States,* 13 Cl.Ct. 718, 731 n. 28 (1987) (and cases cited therein). In this case, the court finds the decisions to be both reasonable and persuasive.

4. Although not argued in response to defendant's motion for summary judgment, the second cause of action in the complaint also challenges the use of an oral solicitation for the reprocurement. Because Bellevue filed after award, it is not entitled to injunctive relief. *United States v. John C. Grimberg Co.,* 702 F.2d 1362 (Fed.Cir. 1983). In addition, its request for bid preparation costs under its second cause of action must

fail. Bellevue has not asserted that any costs arose in connection with the telephone solicitation for the reprocurement. Rather, whatever costs it incurred resulted from preparation of its original bid and preparation of the buses for inspection. These costs could not have resulted from the telephone call.

Moreover, the use of an oral solicitation appears to have been appropriate. The head of an agency is directed to solicit sealed bids "if time permits." 10 U.S.C. § 2304(a)(2) (Supp. II 1984). Under the circumstances, time did not permit a formal written solicitation and sealed bids. *See Brent L. Sellick,* ASBCA No. 21869, 78–2 BCA ¶ 13,510, at 66,193, 66,196 [available on WESTLAW, 1978 WL 2372]. In any event, Bellevue has not alleged that it was prejudiced by the oral solicitation. *See CACI Field Servs., Inc.,* 13 Cl.Ct. at 725–26; *Arrowhead Metals, Ltd. v. United States,* 8 Cl.Ct. 703, 714 (1985); *DeMat Air, Inc. v. United States,* 2 Cl.Ct. 197, 202 (1983).