**In re LAKE WINNEBAGO DEVELOP-MENT COMPANY, INC., Missouri Corporation, Debtor.**

No. 41574–1.

United States District Court,
W.D. Missouri, W.D.

Dec. 11, 1985.

Paul E. Berman, Kansas City, Mo., for debtor.

Abraham E. Margolin, Margolin & Kirwan, Kansas City, Mo., for trustee.

James F.B. Daniels, Husch, Eppenberger, Donohue, Cornfeld & Jenkins, Kansas City, Mo., for Missouri Highway and Transp. Com'n.

## MEMORANDUM AND ORDERS RULING PENDING MOTIONS

JOHN W. OLIVER, Senior District Judge.

### I.

The question of whether an Administrative Claim filed by the State of Missouri, Missouri Highway & Transportation Commission (Commission) should be denied or whether that claim should be allowed in whole or in part is presented by (1) the Trustee's motion for summary judgment, (2) the Commission's cross-motion for summary judgment, and (3) the Commission's alternative motion for partial summary judgment.[1]

The briefs of the parties establish that there are no material facts in dispute and that both the motions for summary judgment and the Commission's alternative motion for partial summary judgment may accordingly be ruled pursuant to Rule 56 of the Federal Rules of Civil Procedure.

We find and conclude that the Trustee's motion for summary judgment should be granted, that the Commission's motion for summary judgment should be denied, but that the Commission's alternative motion for partial summary judgment should be granted.[2]

We turn now to a more detailed statement of the procedural history under which the pending motions for summary judgment and the Commission's alternative motion for partial summary judgment were filed.

### II.

The Commission's Administrative Claim was filed on October 31, 1984 as a "priority administrative claim." The Commission's claim alleged that the "debtor was, at the time of the filing of the petition initiating this case, and still is indebted to this claimant in the sum of $89,082.97" and that the "writing on which this claim is founded (a duplicate thereof) is attached hereto." The writing attached to the claim was a copy of a contract executed by the Commission on October 23, 1969, by the Village of Lake Winnebago on October 2, 1969, and by the debtor on October 2, 1969 (hereinafter "the October 1969 contract" or "the contract.")

On November 9, 1984, the Commission also filed an objection to the confirmation of the Trustee's Plan of Reorganization. That objection attached a copy of the same contract that had been attached to the Commission's Administrative Claim. The Commission accurately alleged in its objection that the Trustee's Plan of Reorganization expressly rejected the October 1969 contract. And on November 16, 1984, the day of the hearing, the Commission filed a motion to modify the Plan of Reorganization. That motion sought to exclude the October 1969 contract from the other exec-

1. The Trustee's motion for an order withdrawing certain funds from the Clerk of the Circuit Court of Cass County, Missouri, to which no suggestions in opposition have been filed, also pends for determination. That motion is moot for the reasons we will state in part V of this memorandum opinion.

2. The Commission's alternative motion for partial summary judgment alleged that "in the event it [this Court] should deny the full relief requested above [in regard to the Commission's $66,480.82 priority claim], the Court grant partial summary judgment declaring movant to be holder of a valid and perfected lien upon the said funds now in the hands of the Circuit Clerk of Cass County, ...."

We believe that the prayer of the Commission's alternative motion is broad enough to include a request for a declaration that the Commission is entitled to an order that it be permitted to withdraw the deposited funds. We shall so treat the prayer of the Commission's alternative motion for partial summary judgment.

utory contracts that were rejected by the Trustee in the Plan of Reorganization.

The Commission appeared at the November 16, 1984 hearing to consider the confirmation of the Trustee's Plan of Reorganization. The Trustee and the Commission entered into a stipulation in regard to the procedures under which the Commission's Administrative Claim would be considered by this Court. The parties agreed that the Commission's objection to the Plan of Reorganization should be overruled and that its motion to amend that plan should be withdrawn.

This Court's Order of November 30, 1984 confirming the Plan of Reorganization accordingly approved the "stipulation of the Trustee and the Missouri Highway and Transportation Department with respect to the objection and claim filed by the latter" and paragraph 21 of that order thus provided that:

21. The objections of the Missouri Highway and Transportation Department (Highway Commission) and its motion to amend the Plan are, respectively, overruled and withdrawn, and the stipulation and agreement between the Highway Commission and the Trustee,

"That the rejection of executory contracts provided for in the Plan is not intended to apply to the claim of the Highway Commission and that the Highway Commission is free to present the claim heretofore filed in these proceedings, subject to the objections and defenses of the Trustee and others in interest"

is hereby approved.

Consistent with and pursuant to paragraph 21 of the November 30, 1984 Order, the Trustee filed his formal objection to the Commission's Administrative Claim in the then alleged amount of $89,082.97. The Trustee's objection alleged that the Commission "has acted in such a manner as to be totally inconsistent with any amount being due and owing from the estate of the debtor" and that the "Trustee has relied on claimant's behavior in actions taken in ad-

ministering the debtor's estate." Trustee's objection filed March 8, 1985, p. 1.

The Trustee's objection further alleged that the contract on which the Commission's Administrative Claim was allegedly based "mandates that should Claimant feel it is entitled to additional costs for road, elevation and bridge work, a demand for such costs must be presented to the debtor and the Village in a *reasonable* time." *Id.* at 1–2. The Trustee placed express reliance on paragraph 4 of the contract which provided that the Commission would:

Advise Village and Company, *as soon as reasonably ascertainable*, of the reasonable costs incurred by Commission in increasing the bridge and roadway elevation from a previously proposed elevation of 923.5 feet to the required elevation of 926.0 feet. In the event Company, or Village, if directly involved, does not agree on the correctness of such increased costs, then Commission will bring judicial proceedings to recover such costs, and the amount of final judgment for such difference in costs shall be charged against the amount due Company and/or Village as compensation for the taking of right-of-way as specifically described in the next succeeding paragraph. Company and Village reserve the right to question the reasonable necessity of costs for, and the construction components allocated to the increase in elevation referred to. (Emphasis added.)

Contract, p. 2.

The Trustee's objection further alleged that the "work was completed, and Claimant presented no bill for additional costs to the debtor or the Trustee for over twelve years"; that "[n]either was any claim to the Trustee's knowledge, presented to the Village, a potential responsible party for payment or partial payment of any additional costs which a court might have ordered had suit been brought pursuant to [the contract]"; that the Commission "never instituted the legal proceedings, as required by the terms of Exhibit A, [the contract] for any payment to which it felt entitled" and that the Commission "never

sought leave of this Court to institute such proceedings against the debtor or the Trustee." Trustee's objection at 2.

The Trustee's objection finally alleged that the Commission's claim should not be allowed upon a number of grounds, including (1) that the Commission's Administrative Claim was not filed until almost 13 years past the November 1, 1971 date set by this Court for the filing of all claims, (2) the Trustee never assumed the contract nor has this Court ever entered an order approving or permitting the Trustee to assume such contract, and (3) the Commission's claim was barred by appropriate application of the doctrine of laches.

The Trustee thereafter filed his motion for summary judgment based on the three grounds alleged in the Trustee's objection that are summarized in the preceding paragraph. The Trustee's motion for summary judgment also attached an affidavit of the Trustee which stated that although he was familiar with some correspondence between the Commission and the attorney for the debtor concerning the contract in July of 1982, he was unaware that the Commission intended to file any claim in the reorganization proceedings until the Commission filed its Administrative Claim on October 31, 1984. The Trustee's affidavit also stated that he had never indicated to either the Commission or to anyone else that he was assuming the October 1969 contract and that he had never petitioned for or received an order of this Court approving or requiring the Trustee's assumption of that contract.

The Commission thereafter filed suggestions in opposition to the Trustee's motion for summary judgment and, on the same date filed its motion for summary judgment or, in the alternative, for partial summary judgment.[3] The Commission's motion for summary judgment prayed that its reduced claim for $66,480.82 be allowed as an administrative priority claim. As above stated, the Commission's alternative motion for partial summary judgment sought a

declaration that in the event the Commission's $66,480.82 priority claim was not allowed, the Court enter an order declaring the Commission to be the holder of a valid and perfected lien upon the funds deposited with the Clerk of the Circuit Court of Cass County, Missouri on May 21, 1970.

We now state the reasons why the Trustee's motion for summary judgment should be granted, why the Commission's motion for summary judgment should be denied, and why the substance of the relief prayed for by the Commission in its alternative motion for partial summary judgment should be granted.

## III.

### A.

■ We find and conclude that the Trustee's motion for summary judgment should be granted on the independent ground that the Commission's Administrative Claim, filed October 31, 1984, was filed almost 13 years out of time. There can be no dispute that this Court, by formal order, established November 1, 1971 as the deadline for the filing of all claims. Nor can there be any doubt that the Commission knew of the pendency of this reorganization proceeding.

For the files and records of this Court establish that on May 24, 1971, a substantial time before the deadline for filing claims expired, the Commission and the Trustee filed a joint application for leave to permit the Commission to file an amendment to its condemnation petition which was then pending in the Circuit Court of Cass County, Missouri. That application and the May 24, 1971 Order entered pursuant thereto permitted an amendment to the Commission's condemnation petition which would enlarge the temporary construction easements which had previously been granted by the State court and which would permit a reduction of the slope gradient to the entrance to the debtor's property to Route 71 By-pass.

---

**3.** For reasons that have not been stated the $89,082.97 initially claimed by the Commission

in its October 31, 1984 Administrative Claim was reduced to $66,480.82.

The May 24, 1971 Order of this Court stated that "leave is granted to the State Highway Commission of Missouri to amend its Condemnation Petition, now pending in the Circuit Court of Cass County, Missouri, in the manner and particulars stated in the Application, and leave is granted to Dale M. Thompson, as Trustee of said Debtor's estate, to agree to the proposed Amendment so as to bring the Amendment into conformity with the provisions of Missouri Supreme Court Rule 55.53." [4]

It is thus clear that the Commission had actual knowledge of the pendency of the reorganization proceeding almost five months before the expiration of the time for filing claims. It is undisputed that the Commission took no action whatsoever in regard to making any claim on the October 1969 contract until it filed its Administrative Claim on October 31, 1984. Nor has the Commission proffered any excuse for its failure to take any action during the intervening period of time.

In *Gardner v. New Jersey*, 329 U.S. 565, 573, 67 S.Ct. 467, 471, 91 L.Ed. 504 (1947), a case involving a tax claim made by the State of New Jersey in a railroad reorganization bankruptcy case, the Court noted that it "is traditional bankruptcy law that he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure." The Court added that the "whole process of proof, allowance, and distribution is, shortly speaking, an adjudication of interests claimed in a *res*" and that when "the State becomes the actor and files a claim against the fund, it waives any immunity which it otherwise might have had respecting the adjudication of the claim." *Id.* at 574, 67 S.Ct. at 472.

The Court made reference to an earlier bankruptcy case in which a claim of the State of New York was involved and concluded that:

> The extent of the constitutional authority of the bankruptcy court in this respect was passed upon in *New York v. Irving Trust Co.*, 288 U.S. 329 [53 S.Ct. 389, 77 L.Ed. 815]. In that case the Court sustained an order of the bankruptcy court which barred a State's tax claim because not filed within the time fixed for filing of claims. The Court stated, p. 333, "If a state desires to participate in the assets of a bankrupt, she must submit to appropriate requirements by the controlling power; otherwise, orderly and expeditious proceedings would be impossible and a fundamental purpose of the Bankruptcy Act would be frustrated." [5]

*Id.* at 574, 67 S.Ct. at 472.

The Commission has not cited any legal authority that can be said to support the notion that the Commission was not under duty to file any and all claims that it might have under the October 1969 contract before the expiration of the November 1, 1971 deadline. Nor did the Commission ever seek an extension of the time within which such a claim might be filed. We therefore find and conclude that the Trustee's motion for summary judgment should be granted on the independent ground that the Commission's claim was filed almost thirteen years out of time.

### B.

We further find and conclude that the Commission's claim may not be allowed for the reason that it is based on a contract which was never assumed by the Trustee in accordance with the requirements of applicable law.

The Fifth Circuit in *Texas Importing Company v. Banco Popular de Puerto*

---

**4.** The May 24, 1971 Order did not in any way authorize the Trustee to assume the October 1969 contract. Nor does the Commission so contend.

**5.** In *Blanchette v. State of New York*, 412 F.Supp. 219, 221, n. 5 (S.D.N.Y.1976), Judge

Marvin Frankel appropriately cited *New York v. Irving Trust Co.* to support his conclusion that a state cannot "bypass the bankruptcy proceedings by not filing claims and litigating against the debtor." We agree.

*Rico,* 360 F.2d 582 (5th Cir.1966), properly concluded that the rule formerly applied in regard to the assumption of contracts in traditional equity receivership cases was not to be applied in a corporate reorganization under the Bankruptcy Act. That case held that:

> While in equity receiverships failure to reject, plus affirmative conduct over a long period may show an adoption, that rule should not be applied in Chapter X proceedings. Close judicial supervision of the entire proceeding is a major tenet of Chapter X. Assumption or adoption of executory contracts may have an important bearing on the financial status of the debtor, and should not be implied from conduct of the trustee or debtor in possession, but should be the result only of judicial consideration.

360 F.2d at 584.

*Texas Importing Company* further stated the duty imposed on the other party to an executory contract entered into between it and the debtor in a bankruptcy proceeding by stating that:

> Our conclusion does not leave the other party to the executory contract without a remedy. If he wants to protect his rights, he should be zealous in seeking the remedy available to him. After a reasonable time under the existing circumstances has elapsed, he may petition the court for an order of affirmative assumption or rejection of his executory contract.

*Id.* at 584–85.

Collier on Bankruptcy, 14th Ed., ¶ 3.23, pp. 578–584, cited and relied upon in *Texas Importing Company* commenced its discussion of a Trustee's power to assume an executory contract with the statement that:

> Chapter X says nothing regarding assumption or adoption of an executory contract, but it is settled that such a contract may be affirmatively adopted *upon order of the court.* Assumption or adoption, however, *requires the express approval of the court before it becomes effective,* and this presupposes notification of the other party concerned as well

as other parties in interest. *As we shall see hereafter, the opposite party to an executory contract may under the proper circumstances petition the court for affirmative adoption or rejection of the contract.* (Emphasis added.)

*Id.* at 578–79.

Collier cited subpart [6] of ¶ 3.23 as the place where the discussion of the power and the duty of the opposite party to an executory contract to petition the reorganization court would be found. In subpart [6] of ¶ 3.23 Collier stated that it was the settled rule that "the trustee or debtor in possession has a reasonable time within which to decide whether adoption or rejection is the better course to recommend to the court." *Id.* at 580–81. In regard to how the Commission, as the other party to the executory contract it entered into with the debtor, could have protected itself, Collier stated that:

> If the other party to the contract wishes to protect himself, he must be zealous of his rights. The fact that the contract is not rejected after a reasonable time does not mean that the contract is assumed. Assumption or adoption of the contract can only be effected through an express order of the court.

*Id.* at 583–84. Collier added that "after a reasonable time has elapsed [the opposite party] may apply to the court for an order affirmatively assuming" the executory contract. *Id.* at 584.

The Seventh Circuit in *In re American National Trust,* 426 F.2d 1059, 1064 (7th Cir.1970), in reliance upon the Fifth Circuit case of *Texas Importing Company* and ¶ 3.23 of Collier concluded that the "assumption of an executory contract in a Chapter X proceeding requires judicial action by the judge and not merely administrative action and decision by the trustee." That case further held that "the trustee is entitled to a reasonable time to make a careful and informed evaluation as to the possible burdens and benefits of an executory contract so that contracts favorable to the debtor may be retained and those not

in its best interests maybe rejected."[6] *Id.* at 1064.

The Commission concedes that all work called for by the October 1969 contract was completed on September 23, 1971, a substantial period of time before the deadline for filing any claim in the contract. Under paragraph 4 of that contract the Commission was obligated to advise both the Village and the debtor, "as soon as reasonably ascertainable" of any additional costs incurred by the Commission in increasing the bridge and roadway elevation from that previously proposed. Paragraph 4 also contained appropriate provisions for the resolution of any dispute that might arise in the event that either the Village or the debtor did not agree with the amount of increased costs incurred, if any, should the Commission determine that some increased cost had, in fact, been incurred under the circumstances.

There can be no question that the Commission breached the duty imposed by paragraph 4 of the contract in that it did not advise either the Village or the debtor of any alleged increased costs "as soon as [those alleged increased costs] were reasonably ascertained." Certainly, it did not take almost thirteen years for the Commission to determine its costs.[7]

The Commission's failure to act in accordance with paragraph 4 made it impossible for the Trustee to evaluate the burden, if any, that the assumption of the October 1969 contract might entail. For it is conceivable that no additional costs whatever might have been incurred under the circumstances of the construction. There thus was no occasion for the Trustee to seek judicial approval of an assumption of the October 1969 contract.

The applicable law establishes that the Commission was not without an appropriate remedy to protect any claim that it wished to make under the contract. If the Commission determined that it desired to protect any right under the contract, all it had to do was to petition this Court for an order of assumption of what it now claims was its executory contract with the debtor.[8]

■ The applicable law above cited imposed the duty on the Commission to "be zealous in seeking the remedy available [to it]." *Texas Importing Co., supra,* 360 F.2d at 584. For reasons that have never been satisfactorily explained, the Commission did absolutely nothing to protect any right it wished to claim under the contract until it filed its Administrative Claim on October 31, 1984, almost thirteen years after the completion of the work called for by the contract.

**6.** The Ninth Circuit in *Local Joint Executive Bd., Etc. v. Hotel Circle,* 613 F.2d 210, 215 (9th Cir. 1980), stated its agreement with the Fifth and the Seventh Circuits by holding that "[w]hile neither we nor the Supreme Court has passed on the question before us, the more persuasive cases from other jurisdictions hold that '"[a]ssumption or adoption of the contract can only be effected through an express order of the [bankruptcy] judge."' *In re American National Trust,* 426 F.2d 1059, 1064 (7th Cir.1970) (quoting 6 Collier on Bankruptcy ¶ 3.23[5], p. 578 (14th ed. 1976)). *See also Texas Importing Co. v. Banco Popular de Puerto Rico,* 360 F.2d 582, 584 (5th Cir.1966)."

**7.** The difficulty in ascertaining costs at this late date is illustrated by the fact that the Administrative Claim, filed October 31, 1984, claimed that the debtor was "indebted to this claimant in the sum of $89,082.97." An affidavit executed by the district engineer for the Commission dated August 28, 1985, however, purported to fix the sum of $66,480.82 as the amount allegedly owed by the debtor. The Commission has not attempted to explain the substantial variation between the two amounts.

**8.** The Commission, of course, has shifted its position in regard to whether the October 1969 contract should be considered an executory contract. For in paragraph 5 of the Commission's Objection to the Plan of Reorganization, the Commission stated that the "Trustee may not reject this contract because it is not executory." The Commission there argued that because "the Commission has fully performed under the contract, it is not 'executory' and cannot, therefore, be rejected by the Trustee."

In all the briefs filed in connection with the cross-motions for summary judgment, the Commission has argued that the contract was an executory contract. The Commission's shift of position, however, is immaterial for it is clear that neither the Trustee nor the Commission ever sought any order of Court that would approve the Trustee's assumption of the contract.

Under the undisputed factual circumstances we find and conclude that the Trustee's motion for summary judgment on the second and independent ground that the Commission cannot base a claim on a contract that was never assumed by the Trustee in accordance with applicable law should be granted.

### C.

We also find and conclude that the Trustee's motion for summary judgment should be granted on the third and independent ground that the Commission's claim is barred by the doctrine of laches.

■ The Commission seeks to avoid an application of the equitable doctrine of laches by relying on cases such as *State v. Excelsior Powder Mfg. Co.*, 169 S.W. 267, 275 (Mo.1914), in which the Supreme Court of Missouri stated by way of dictum that "laches will not be imputed to the state." The Commission also argued that it is "axiomatic" that "equity follows the law and ordinarily will not hold a party barred by laches where the statute of limitations has not run," quoting from *Hughes v. Neely*, 332 S.W.2d 1 (Mo.1960) [9]

■ The fundamental difficulty with the Commission's effort to rely upon state court cases is that the Congress, acting pursuant to power conferred by the Constitution, has vested exclusive jurisdiction of bankruptcy proceedings in the bankruptcy court. Federal rather than state law is thus to be applied.

Collier on Bankruptcy, 14th ed., ¶ 9.05, p. 1544, states that Chapter X of the Bankruptcy Act has as its goal "the conserva-

tion of the going-concern values of the debtor through a fair, equitable and feasible plan of reorganization." Collier added that:

> To that end "debts" are defined to "include all claims", "creditor" is defined as the "holder of any claim", and "claims" are defined as including "all claims of whatever character against a debtor or its property, except stock, whether or not such claims are provable under section 63 of this Act and whether secured or unsecured, liquidated or unliquidated, fixed or contingent." This is a sweeping provision, which is to be given a broad construction in order to dispose of all the liabilities of every kind of the debtor in reorganization.[10]

■ The Commission's Administrative Claim appropriately stated that the "State of Missouri, Missouri Highway & Transportation Commission" was the "creditor" which was filing the "priority administration claim" in this reorganization proceeding. *New York v. Irving Trust, supra*, and *Gardner v. New Jersey, supra* both make clear that if "a State desires to participate in the assets of a bankrupt, she must submit to appropriate requirements by the controlling power." And Collier on Bankruptcy, 14th ed., ¶ 9.03, p. 1523, in its discussion of the time for filing proofs of claim, stated that there is "no reason why the sovereign, so far as the filing of claims is concerned, should not be held to the same diligence demanded of creditors in general." We agree.

■ Under applicable federal law this Court, in its exercise of its bankruptcy

---

**9.** The Commission's reliance upon the language from *Hughes v. Neely* was made to support its obviously untenable argument that the statute of limitations was somehow tolled by Section 11(f) of the Bankruptcy Act and this Court's November 16, 1970 stay order. The Commission attempted to argue that "the stay has effectively precluded MHTC from making prior demand upon the debtor or Trustee for reimbursement under the contract."

Apart from the fact that the Commission cites no authority to support its argument, it is clear that the running of the statute of limitations is

only one factor to be considered in determining whether the doctrine of laches should be applied in a particular case.

**10.** *See also* Collier on Bankruptcy, ¶ 9.06, pp. 1547–48 in which it is stated that "the fact that a particular claim is contingent or not presently due or is not liquidated in amount is no bar to its proof and allowance in a Chapter X case" and that it has been said that "a satisfactory corporate reorganization would be nearly impossible without proper recognition and disposition of contingent and unliquidated claims."

jurisdiction, must proceed as a court of equity. *See Local Loan Co. v. Hunt*, 292 U.S. 234, 240, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1934) and *Pepper v. Litton*, 308 U.S. 295, 303–08, 60 S.Ct. 238, 243–46, 84 L.Ed. 281 (1939). The doctrine of laches therefore must be applied consistent with the established principles of equity most recently reiterated in *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800 (8th Cir. 1979). That case held that the "doctrine of laches is an equitable defense, and the United States Supreme Court in *Gardner v. Panama Railroad Co.*, 342 U.S. 29, 30, 72 S.Ct. 12, 13, 96 L.Ed. 31 (1951), stated that 'the existence of laches is a question primarily addressed to the discretion of the trial court.'" 606 F.2d at 804.

*Goodman* also made clear "[t]his does not mean, however, that the District Court's decision is unfettered by appropriate standards or shielded from thorough appellate review." That case further concluded that "[f]or the application of the doctrine of laches to bar a lawsuit, the plaintiff must be guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." *Id.* at 804.

*Goodman* also held that in "applying the doctrine of laches, an important consideration is the appropriate role of an analogous statute of limitation." Specific attention was directed to *Gardner v. Panama Railroad Co.*, 342 U.S. 29, 30–31, 72 S.Ct. 12, 13, 96 L.Ed. 31 (1951), in which the Supreme Court appropriately noted that "the existence of laches ... should not be determined merely by a reference to and a mechanical application of the statute of limitations."

■ We expressly conclude that although the Missouri statute of limitations had long expired, we do not apply the doctrine of laches by making a mechanical application of that fact. The most important aspect of the running of the statute of limitations under the circumstances in this case relates to the additional fact that the Commission has also permitted the statute of limitations to run against the Village to the prejudice of the debtor in that, assuming that increased costs might have been due under the contract, such costs could have been recovered in part from the Village.

■ Application of the standards stated in *Goodman* to the undisputed factual circumstances of this case is not difficult. The Commission's almost thirteen-year delay in making any claim on the October 1969 contract was obviously an unreasonable delay. The Commission has not suggested any valid reason that can be said to excuse that unreasonable delay. The Commission was aware of the pendency of this bankruptcy reorganization proceeding at the very latest in May, 1971. The work on the contract was completed before the expiration of the time the Commission could have filed any claim that it wished to make for any alleged increased costs. For reasons yet to be explained, the Commission failed to assert any claim for almost thirteen years. The ancient and familiar maxim of equity—"Ligilantibus non dormienibus jura subvenient" (equity aids the vigilant, not those sleeping on their rights)—is applicable to the undisputed circumstances of the case.

The prejudice to the debtor and to the creditors of the debtor created by the Commission's slumber is obvious in light of the fact that the nature, and where possible, the amount of all Administrative Claims were disclosed to the creditors before the Plan of Reorganization was submitted for approval. In addition, the obvious disparity between the amount initially claimed by the Commission in its Administrative Claim and that stated in its objections to the Plan of Reorganization indicates the difficulty of ascertaining at this late date to what claim, if any, the Commission may have been entitled. The fact that the Commission permitted the statute of limitations to run in regard to any claim that the Commission may have had against the Village must also be given appropriate consideration. For that action permitted a potentially responsible party under the contract to escape any and all liability the Village may have had under the contract. Prejudice is thus

established by the fact that the Commission now seeks to hold the Trustee fully responsible for all of the amounts that the Commission claims were owed for its alleged increased costs under the contract.

The failure of the Commission to present any demand for any excess costs "as soon as reasonably ascertainable," as expressly required by paragraph 4 of the October 1969 contract, deprived both the debtor and the Village of the opportunity to challenge the amount of any additional costs that might have been claimed by the Commission. Any effort at this late date to reconstruct what work was done and whether the costs may have been reasonable under the circumstances would create an almost impossible burden to find records and witnesses with knowledge of the Commission's more than stale claim.

In light of the unreasonable and inexcusable delay of the Commission, coupled with the obvious prejudice to the Trustee occasioned by the delay requires that we find and conclude that the Trustee's motion for summary judgment should be granted on the third and independent equitable ground that the Commission's claim is barred by the doctrine of laches.

### D.

The Commission argued on page 1 of its brief in support of its motion for summary judgment to have its $66,480.83 Administrative Claim allowed that its claim in that amount was not barred either by this Court's August 3, 1971 Order setting the November 1, 1971 deadline for the filing of claims or by the doctrine of laches. The Commission there contended that its claim was "founded upon an unrejected executory contract upon which the Trustee remains bound." Although the Commission concedes on page 7 of its brief that its "contention that its claim is not time-barred is obviously contingent upon its ability to

demonstrate that the contract in question *has been assumed by the Trustee*, whether explicitly, implicitly or by operation of law" (emphasis added), it nevertheless attempts to rely upon language contained in Section 116(1) and Section 216 of the Bankruptcy Act to support its argument.

The Commission contends that under those two sections of the Bankruptcy Act a Trustee is vested with power only to reject certain executory contracts and that power to reject an executory contract "in the public authority" is excluded by those two sections of the Act.[11]

On page 9 of its brief the Commission details its argument by contending that because the October 1969 contract is an executory contract "in the public authority" that such a contract "cannot be rejected by the Trustee." The Commission also added that "it makes little sense for the Trustee to assert that the contract has not been assumed merely because no order to that effect has ever been entered." The Commission finally argued that since "the contract in question *cannot* be rejected, ... his assumption thereof, must be presumed as a matter of law." (Emphasis, the Commission's.) We disagree.

In the first place, the Commission's Administrative Claim was not based on the argument upon which the Commission now attempts to rely. Indeed, the Commission did not cite any section of the Bankruptcy Act in support of its Administrative Claim. More fundamentally, however, the cross-motions for summary judgment do not present any question in regard to the Trustee's power of rejection of executory contracts in general, or his power to reject the October 1969 contract in particular.

The stipulation of the parties approved by this Court in its November 30, 1984 Order recognized that the Trustee's rejection of the executory contracts provided for

---

11. Specifically, the Commission stated on page 8 of its brief that "Section 116(1) former 11 U.S.C. Section 516 specifies *inter alia*, that "[u]pon approval of a petition, the judge may ... permit the rejection of executory contracts of the debtor, *except contracts in the public authority*".

Similarly, Section 216, former 11 U.S.C. Section 616(4) states that a plan of reorganization under Chapter X "may provide for the rejection of any executory contract *except contracts in the public authority*". (Emphasis added.)

in the Plan was approved but that such rejection was "not intended to apply to the claim of the Highway Commission and that the Highway Commission is free to present the claim heretofore filed in these proceedings, subject to the objections and defenses of the Trustee and others in interest."

■ It is thus apparent that the cross-motions for summary judgment did not present any question in regard to whether Section 116(1) and Section 216 of the Bankruptcy Act limited the power of the Trustee to reject the October 1969 contract. Rather, the question presented by the cross-motions for summary judgment, as the Commission conceded on page 7 of its brief, turned on the Commission's "ability to demonstrate that the contract in question *has been assumed by the Trustee*, whether explicitly, implictly or by operation of law." (Emphasis added.)

We have found and concluded that the Trustee did not in any manner assume the October 1969 contract and that such an assumption could have been made only in accordance with the principles of law that we have stated above in detail. We accordingly reject the Commission's argument based on the two sections of the Bankruptcy Act upon which it attempts to rely.

The reasons why the Trustee's motion for summary judgment should be granted also require that the Commission's motion for summary judgment that its $66,480.82 claim be allowed should be denied. The final question presented relates to what disposition should be made in regard to the Commission's alternative motion for partial summary judgment. We turn now to that question.

### IV.

We have heretofore determined that the Commission's prayer in its alternative motion for partial summary judgment may properly be treated as broad enough to include a request for an order directing the clerk of the State court to pay the funds on deposit in the State condemnation proceeding to the Commission. We therefore must determine whether the Trustee or the Com-

mission is entitled to the funds on deposit with the clerk of the State court, together with the interest that has accrued on the $22,000.00 deposited by the Commission on May 21, 1970. We find and conclude that an order should be entered directing the clerk to pay the deposited funds, plus interest, to the Commission.

There, of course, is no factual dispute in regard to the circumstances under which the $22,000.00 was originally deposited. That deposit simply reflected a tentative award in the State condemnation proceeding and was to be retained by the clerk of the State court "until the amount finally found to be due the Commission" was eventually determined.

That determination, however, was never made because the Commission failed to comply with the duty imposed by paragraph 4 of the contract to advise the Village and the debtor "as soon as [the additional costs, if any' were reasonably ascertainable." It was thus the Commission's failure to act in accordance with paragraph 4 of the contract that resulted in a breach and frustration of the October 1969 contract.

■ The Trustee's motion for summary judgment to disallow the Commission's Administrative Claim was granted, in part, on the equitable ground that the Trustee was entitled to revoke the doctrine of laches. In addition, under this Court's November 30, 1984 Order confirming the Plan of Reorganization, the Trustee was permitted to reject the October 1969 contract. There can be no doubt that the Commission's breach of contract to advise the Village and the debtor of any additional costs as soon as such costs were "reasonably ascertainable," frustrated the complete execution of the contract as agreed to by those parties.

But those facts, in our judgment, do not support a finding and conclusion that the Trustee can both refuse to assume and to reject the contract and still be entitled to claim the benefit of the Commission's partial compliance with the provision of the contract which required it to make the de-

posit of $22,000.00 back in May of 1970. It is Hornbook law that "he who seeks equity must do equity." 27 Am.Jur.2d, Equity § 131, p. 660. It is equally clear that the principle stated "is as applicable to a party defendant who seeks the aid of equity as it is to a party complainant." *Id.* at 661.

The Trustee successfully sought the application of the equitable doctrine of laches to defeat the Commission's claim for $66,-480.82. We find and conclude that the Trustee must do equity by foregoing any claim to the funds deposited under the contract which he not only refused to assume but eventually rejected in the Plan of Reorganization. It is our view that equity may not permit the Trustee to claim the benefit of the Commission's partial compliance with a contract that the Trustee refused to assume, and at the same time, to reject the detriment that compliance with other portions of such a contract might entail.

Accordingly, an order will be entered directing the Clerk of the Circuit Court of Cass County, Missouri to permit the Commission to withdraw the $22,000.00 deposited on May 21, 1970, together with accrued interest. We turn now to the Trustee's motion for an order that would transfer the funds on deposit with the clerk of the State court to this Court.

### V.

The Trustee's motion for an order withdrawing the $22,000.00 plus interest fund from the Circuit Court of Cass County, Missouri and to transfer those funds for deposit in an interest bearing account in this Court was filed after the parties had entered into their stipulation in regard to how the Commission's claim would be presented but before the cross-motions for summary judgment were filed. The Trustee's motion, however, did not seek an order that he was entitled to those funds.

Rather, the Trustee's motion alleged that the "Commission has agreed that the issues involved in its claim, including objections and defenses, shall be heard in these proceedings" and that the "fate of the $22,-000 plus interest asset of the estate is clearly in the hands of this Court." (Trustee's Motion at 3–4.) The Trustee's motion then alleged that:

> Once the Court has decided upon the Commission's claim another proceeding should not be necessary to obtain the sum from the Cass County Clerk. All issues relating to this sum are, by stipulation, before this Court. The Trustee contends that the sum in question should also be before the Court, ... to be placed in an interest bearing account, until such time as the Court decides upon the Commission's claim.

*Id.* at 4.

It is thus clear that the Trustee's motion only sought interim relief for the purpose of avoiding a possible further proceeding in regard to the funds deposited with the State court. Indeed, the Trustee made clear in its final brief on the motions for summary judgment that the Trustee's motion to withdraw the funds had been filed only for the purpose of "requesting that the funds be transferred to the custody of this Court."

This Court's determination that an order should be entered directing that the deposited funds, plus interest, be paid the Commission effectively moots the Trustee's pending motion. An order will be entered so stating.

### VI.

For the reasons stated, it is

ORDERED (1) that the Trustee's motion for summary judgment on the $66,480.82 priority administrative claim of the State of Missouri, Missouri Highway and Transportation Commission should be and the same is hereby granted. It is further

ORDERED (2) that the Missouri Highway and Transportation Commission's (MHTC) cross-motion for summary judgment to have its $66,480.82 priority administrative claim allowed should be and both are hereby denied. It is further

ORDERED (3) that the Commission's alternative motion for partial summary judgment should be and the same is hereby

granted. The Clerk of the Circuit Court of Cass County, Missouri is therefore directed and authorized to pay the $22,000.00 deposited with him by the Commission on May 21, 1970, together with accrued interest, to the Missouri Highway and Transportation Commission, said deposit having been made in Condemnation Case No. 31890 that pends in that court. It is further

ORDERED (4) that the Trustee's motion for an order of Court withdrawing certain funds from the Clerk of Circuit Court of Cass County, Missouri and depositing the same with the federal court should be denied as moot. It is further

ORDERED (5) that the Clerk, pursuant to Rule 58 of the Federal Rules of Civil Procedure, enter the judgments on a separate document in accordance with the orders above entered.